MEERS *v.* TOMMY'S MEN'S STORE, INC.

5-1727                                          320 S. W. 2d 770

Opinion delivered February 16, 1959.

50

*Digby & Tanner,* for appellant.

*Dean R. Morley, A. F. House,* for appellee.

J. SEABORN HOLT, Associate Justice. May 22, 1956 Tommy's Men's Store, Inc., (referred to as "Tommy" and "Karam") leased from the then owner, W. A. Stern, the property located at 419 Main Street, City of Little Rock, Arkansas, described as the North 41 feet of Lot 5, Block 5, original City of Little Rock, on which is located a five story building. The lease was to take effect July 1, 1957 for a term of five years, together with an option to renew for an additional five years, along with an option to purchase. Tommy took possession on the date stipulated, July 1, 1957, proceeded to make a number of improvements, erect signs, and prepare the building for occupancy. He occupied the first floor and sub-let the second floor to the Roseanne Shop. The three top floors remained empty. In January 1957 Stern sold the property to Appellant Meers, subject to Tommy's lease. Appellant Meers brought the present suit to require Tommy to eliminate the option clause and relinquish his leasehold interest in the property.

The trial court found that there had been no violation of the lease sufficient to justify cancellation, dismissed appellant's complaint, but ordered that appellee

deposit $4,000 in escrow to restore the premises to its original condition upon termination of the lease. This escrow agreement was duly executed and filed. This appeal followed. For reversal appellant relies on the following points:

(1) "Appellee breached the lease by making alterations without lessor's written consent.

(2) "Appellee breached the lease by non-use of the premises.

(3) "Appellee breached the lease by erection of signs without consent of the lessor."

—1—

On this first point appellant says: "Paragraph 7 of the lease agreement is as follows: 'Lessee will not make any alterations, additions or improvements without the Lessor's prior written consent.' The appellee did make extensive alterations, additions and improvements without the written consent of the lessor, and his actions certainly constitute a breach of the agreement." We do not agree. It appears undisputed that before making the improvements Tommy wrote a letter to Stern (his lessor) explaining his "layout" and plans for improvements to the building, and in his reply Stern used this language: ". . . Received your letters with your layout and plans and as I discussed with you on the phone, they look wonderful and of course nothing would please me more than to see you work same out." This, we think, was in effect an approval by Stern of the proposed improvements. Tommy testified, in effect, that the improvements he made were identical to those he outlined to Stern. Meers, (appellant) the new owner, could not arbitrarily refuse permission to Tommy to make alterations and improvements. Tommy testified, as to the alterations and improvements, that he removed a stairway that almost halved the merchandising area on the first floor (which he occupied). He installed modern toilet equipment, carpeting, tiling, an air conditioning unit, and other improvements as would appeal to

customers. ". . . I went in and that back wall, the Fire Chief suggested I take that out because it was a fire trap and we took the wall out and also we took down the steps that were right in the middle of the building . . ." He changed the words "Rube and Scott" which appeared in the sign already on the building to "Tommy's".

Mr. Connor, a realtor who negotiated the lease, testified as to the improved quality of the building after the repairs and improvements. It further appears that Meers stood silently by and made no complaint while these improvements were being made and we think his complaint now comes too late.

The principle of law is announced in 3 Thompson, Real Property 1472 (Perm. Ed. 1940): "It is well settled that where the breach of a condition consists of a single act, the forfeiture may be waived by any act which may be construed as an affirmance of the contract. The waiver need not be by affirmative acts, but any seeming acquiescence, laches, or estoppel will accomplish the same end . . . A lessor having, by his words and conduct, caused his lessees to believe that he would not enforce a forfeiture provided for in the lease is equitably estopped from seeking to avail himself of the forfeiture, although the consent was not given in writing as required by the lease . . . Where the agency of the landlord is involved in any way in the act which is to work a forfeiture, he ought so to act as to make it clearly appear that he intends to insist upon the forfeiture . . ." And in Section 1467, "Under certain circumstances, a court of equity may, without violating any settled rules, relieve against forfeiture. Forfeitures which are incurred through inadvertence or mistake, without any bad faith on the part of the lessee, will be relieved against on a showing that no actual damage has been sustained by the lessor . . . Equity relieves against a forfeiture where no real fault has been committed, or the breach was induced or waived by conduct, as well as when by accident or mistake there has been a breach of some collateral covenant, such as to repair or

insure, and where the lessor may be placed in the same position as if the breach had not occurred by an award of damages or otherwise.''

In *Scrinopskie* v. *Meidert*, 213 Ark. 336, 210 S. W. 2d 281, we said: ''. . . Every effort should be made to interpret contracts favorably to their enforcement and to prevent forfeitures . . . Forfeitures are not favored in the law, and in order to be enforced they must be plainly and unambiguously provided in the contract. It is the duty of the courts, when contracts are fairly susceptible of more than one construction, to adopt such as will not work a forfeiture of the acquired rights of either party . . . But where forfeitures are provided for by the express terms of a contract, it has been well settled that they are not favored in equity. It is well recognized that the right of forfeiture is a harsh remedy and liable to produce great hardships. For this reason it has been uniformly held that before a forfeiture will be declared the law will require that a strict compliance with every important prerequisite must be shown, even in such contracts where the forfeiture is provided for by express terms.'' It is undisputed that Tommy has paid the rent stipulated regularly on the first and second floors.

—2—

Appellant's contention that ''appellee breached the lease by non-use of the premises'' we think is untenable. As we interpret the terms of the lease, Tommy had a right to occupy the upper three floors but the lease did not obligate him to do so. Paragraph 5 of the lease provides: ''The Lessee may sub-let the second, third, fourth and fifth floors to clothing merchandisers . . .'' Had the lessor intended the word *''may''* to mean *''must''* it would have been a simple matter to have so stated. It appears undisputed that the three top floors had not been occupied but had been vacant for 10 to 12 years. As to the rental Tommy was required to pay, the lease provides: ''The Lessee covenants and agrees to pay to the Lessor, as annual rent for said

premises, a sum equal to five per cent (5%) of the gross sales up to $750,000.00 and three per cent (3%) of the gross sales over and above $750,000.00 with a guaranteed minimum annual rental of $14,400.00 to be paid monthly in advance in twelve (12) equal installments; the above percentage rates to be paid so long as there is produced from the second floor of the building an annual volume of gross sales not less than $100,000.00. In the event that the volume of gross sales from the second floor, in any lease year, amounts to less than $100,000.00, then the Lessee covenants and agrees to pay to the Lessor as rent for said premises for that lease year, a sum equal to six per cent (6%) of all the gross sales made from the demised premises.''

Thus it appears clear that if the gross sales from the second floor are less than $100,000.00 then Tommy is penalized by being required to pay six per cent (6%) of such gross sales. This appears to be the only penalty mentioned in the lease. Appellant also contends that Tommy was obligated to occupy all five floors under paragraph 16 which provides: ''Lessee will not permit the leased premises to remain vacant or unused for the purposes for which leased for more than thirty consecutive days without the written consent of the Lessor.'' We do not agree. Had it been the intention of the parties that Tommy was obligated to occupy all five floors personally or through sub-tenants on penalty of forfeiture of the lease if he failed to do so, it would have been very easy to have said so in plain terms, or by inserting the words ''or any part thereof'' after the word ''premises.'' Further, we think there has been no breach of this provision for the reason that the building, all of which is in the lease, is not vacant or unused. Even should the lease appear ambiguous in any of its provisions, the rule is well settled that a written contract will be construed against the one who prepared it. Here it clearly appears that the lease in question was prepared by Stern's attorney, the late Raymond Roddy. In *Bracy Bros. Hardware Co.* v. *Herman-McCain Construction Co.*, 163 Ark. 133, 259 S. W. 384, we said: ''The contract, which is the foundation of appellant's action,

was written by the appellant, and therefore, under a familiar rule of law, if any of its terms are ambiguous so that it becomes necessary to construe it, parol evidence may be admitted to throw light upon the meaning of the contract. Where there is doubt as to the meaning of the contract, such doubt must be resolved against the party who prepared the contract."

—3—

As to appellant's final contention that "appellee breached the lease by erecting signs without consent of the lessor," but little need be said. It appears undisputed that Tommy, as indicated, only changed the wording in the sign already on the building from "Rube and Scott" to "Tommy's." Appellant makes no serious contention that this change in the sign standing alone would be sufficient to cause forfeiture of the lease. He says that this violation together with other breaches was sufficient to constitute a forfeiture. We think this contention is wholly without merit.

Accordingly, the decree is affirmed.

McFADDIN and ROBINSON, JJ., concur; SMITH, J., not participating.

ED. F. McFADDIN, Associate Justice (concurring). My concurrence is because of some matters not mentioned in the majority opinion. Meers claimed a breach of the lease contract on either one of three grounds:

1. Alterations without lessor's consent;

2. Non-use of upper floors of the building;

3. Erection of a sign.

I agree with the majority opinion on both the second and third grounds: there was no requirement in the lease for full use of the upper floors; and the matter of the sign was rather trivial. But as to the first ground claimed by Meers—i.e. alteration without lessor's written consent— I have an entirely different view from that expressed in the majority opinion. I think the alterations were mate-

rial; and I cannot find any consent by Meers or Stearns that would cover the extensive alterations made. So I think Meers made a good case on the matter of alterations; but he waived his case on that point by his subsequent conduct.

The record discloses that in the course of the trial the defendant (Tommy's Men's Store, Inc.) denied that there had been any unauthorized alterations in the building, but offered to deposit in escrow a sum sufficient to guarantee restoration[1] of the building to its original condition at the end of the lease period. The decree from which this appeal comes was entered on April 22, 1958, and contained the following language:

"Therefore, it is ordered and decreed that: . . . 2. The complaint of the plaintiff as to the defendant Tommy's Men's Store, Inc., be, and the same is hereby, dismissed.

3. The defendant Tommy's Men's Store, Inc., shall deposit the sum of $4,000 in cash or United States Bonds with Worthen Bank & Trust Company as Escrow Agent to be held and disbursed upon the following terms and conditions, to-wit:

(a) The Escrow Agent's fee shall be paid by Tommy's Men's Store, Inc.

(b) If United States bonds are deposited, the income therefrom shall be paid to the defendant Tommy's Men's Store, Inc.

(c) At the termination of the lease now in effect, Tommy's Men's Store, Inc., shall, at the election of the plaintiff, remove the additions made to the leased premises by Tommy's Men's Store, Inc., and restore the same to the condition which existed as of the date the lease was executed. Upon failure on the part of Tommy's Men's Store, Inc., so to remove and so to restore, the plaintiff may remove the additions made to the leased premises and restore the same to the condition which existed as of

---

[1] If there had been no material alterations, then there need not have been a deposit; so such offer was almost tantamount to admitting that there had been alterations without the lessor's prior consent.

the date the lease was executed, and the cost thereof shall be paid to plaintiff by the Escrow Agent. If the parties cannot agree as to the proper amount to be paid, the question shall be settled by supplemental order of this court. If the plaintiff does not elect to have the additions removed and the premises restored to the condition which existed as of the date the lease became effective or of the defendant Tommy's Men's Store, Inc., removes such additions and restores the premises as hereinabove provided, the Escrow Agent shall pay the funds held in escrow to Tommy's Men's Store, Inc.

(d)   This Court retains jurisdiction to settle all issues arising in connection with the disposition of the principal amount of the funds or United States Bonds placed in escrow, and the Escrow Agent shall not be required to disburse any part thereof to either the plaintiff or Tommy's Men's Store, Inc., until ordered to do so by this Court.''

In accordance with the above copied decree, an Escrow Agreement was signed by the parties and the Escrow Agent on May 12, 1958; and the agreement reads:

''THIS AGREEMENT, Made and entered into by and between PAUL MEERS, hereinafter referred to as ''Meers,'' TOMMY'S MEN'S STORE, INC., hereinafter referred to as ''Tommy's,'' and WORTHEN BANK & TRUST COMPANY, hereinafter referred to as ''Escrow Agent,'' WITNESSETH:

1.   On May 22, 1957, Meers leased to Tommy's for a period of five years the North 41 feet of Lot 5, Block 5, Original City of Little Rock. The lease provides that subject to certain conditions it may be extended for an additional period of five years. Recently there has been litigation in the Pulaski Chancery Court involving the said lease, and attached hereto and made a part hereof is a copy of the Decree entered in said court on the ............ day of April, 1958.

2.   Tommy's has deposited with the Escrow Agent the following described United States of America ''E'' bonds:

(here follows number and description of
bonds of the face amount at maturity
of $5,325.00)

3. Escrow Agent acknowledges receipt of said bonds and agrees to hold them in accordance with the terms of this agreement. All interest which may accrue on said bonds shall belong to and be paid by the Escrow Agent to Tommy's. Neither the bonds nor the proceeds thereof shall be delivered or paid by the Escrow Agent to Meers or Tommy's except upon presentation to the Escrow Agent of a certified copy of an order of the Pulaski Chancery Court authorizing such delivery or payment.

4. The fee of the Escrow Agent shall be paid by Tommy's. Dated this 12th day of May, 1958.''

I maintain that when Mr. Meers signed the said agreement of May 12, 1958, he accepted benefits under the decree entirely inconsistent with his claim for cancellation of the lease because of unauthorized alterations in the building. He cannot now insist on unauthorized alterations in the building, because he accepted the benefit of the Escrow Agreement. For some cases and texts on this matter of accepting benefits inconsistent with the appeal, see *Jones* v. *Rogers,* 222 Ark. 523, 261 S. W. 2d 649, and cases there cited. See also annotation in 169 A. L. R. 985 entitled: ''Right of appeal from judgment or decree as affected by acceptance of benefit thereunder.''

Because of the acceptance of the benefits inconsistent with the decree, I think Mr. Meers lost the right to make any claim of unauthorized alterations in the building; and that is the basis of my concurrence.