Keath NORTH v. William V. PHILLIBER
and Loreta PHILLIBER, His Wife

80-77                                    602 S.W. 2d 643
Supreme Court of Arkansas
Opinion delivered June 30, 1980
Rehearing denied August 25, 1980

404

*Patten, Brown, Leslie & Davidson*, by: *Charles A. Brown*, for appellant.

*Homer Tanner*, for appellee.

JOHN F. STROUD, Justice. This is a suit for damages for the breach of a written contract to convey real property. The trial court denied judgment and found the seller was justified in refusing to convey. We disagree.

In early 1978 appellees listed certain residential property in Little Rock for sale with Block Realty Company for the asking price of $28,750. Appellant, a licensed real estate broker, inspected the apartments on the property and submitted an offer in his own behalf of $22,500 to appellees through Grady Wahlquist, one of Block's salesman. The offer was accepted and signed by appellees on April 3, 1978, and provided that the "closing date to be designated by agent, is estimated to be on or about 45 days from acceptance." On or about June 12, appellees came to Little Rock and were requested by appellant to sign certain papers concerning the conventional loan required as a part of the transaction, but they refused to do so. After several months of negotiations and demands proved futile, appellant filed suit against appellees seeking $10,000 in damages for breach of the offer and acceptance agreement. The trial court, sitting as a jury, found that the contract was in several respects fatally ambiguous, that appellant had attempted to vary the terms of the written agreement, that the transaction was "raw" as appellant and Wahlquist had attempted to take advantage of appellees, that appellant had failed to tender to appellees copies of the closing instruments and payment of the cash portion of the contract price, and that appellant had failed to prove the allegations in his complaint by a preponderance of the evidence. Appellant brings this appeal, alleging five points for reversal.

Appellant first contends that the trial court erred in finding the agreement ambiguous as to the terms of the purchase price, the execution of closing documents, the subordination of the proposed lien of appellees, and the use of the proceeds of the loan to be obtained by appellant. The offer and acceptance, after reciting the purchase price of $22,500, in pertinent part provided:

$6,500.00 of the purchase price payable in cash. Balance of purchase price in the amount of $16,000.00 in the

form of a note secured by a Second Deed of Trust ((mortgage) on the property; to be executed by Purchaser in favor of Sellers, payable at $162.29 per month, or more, including interst at 9% per annum, (with entire balance due 15 years from date. of note or upon sale or transfer of the property). Conditioned upon purchaser obtaining a conventional loan to be secured by the property in an amount not to exceed 75% per cent of appraised value.

After Wahlquist received the offer from appellant, he discussed the terms with Rev. Philliber by telephone, and mailed them the offer and acceptance upon being advised that they wished to accept it. It is the duty of the court to construe a contract according to its unambiguous language without enlarging or extending its terms. *Christmas* v. *Railey*, 260 Ark. 150, 539 S.W. 2d 405 (1976); *New York Life Insurance Company* v. *Dandridge*, 202 Ark. 112, 149 S.W. 2d 45 (1941). Further, while any ambiguity in a contract must be construed against the party who drafted it, *Christmas*, supra, a construction which neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions. *Continental Casualty Co.* v. *Davidson*, 250 Ark. 35, 463 S.W. 2d 652 (1971); *Fowler* v. *Unionaid Life Ins. Co.*, 180 Ark. 140, 20 S.W. 2d 611 (1929). In *Fowler*, supra, we stated the following:

It is also a well-settled rule in construcing a contract that the intention of the parties is to be gathered not from particular words and phrases but from the whole context of the agreement. In fact, it may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument and not merely on disjointed or particular parts of it. The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause. Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. The contract must be viewed from beginning to

end, and all its terms must pass in review, for one clause may modify, limit, or illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized, if that course is reasonably possible. Each of its provisions must be considered in connection with the others, and, if possible, effect must be given to all.

The testimony of Rev. Philliber, Wahlquist and appellant indicates that they all understood that a portion of the down payment of $6,500 would be used to pay off a current loan of appellees secured by the property, and that the $16,000 lien to be retained by appellees at closing would be a second lien. They all understood that appellant would obtain a loan to be secured by a first lien on the property. On the same day that appellees signed the offer and acceptance, Rev. Philliber wrote a letter to Wahlquist acknowledging that he had signed the contract and referring to most of its terms. Before Rev. Philliber signed, he called his realtor, Wahlquist, because the agreement did not require appellant to spend the proceeds of the loan he was to obtain on improvements on the property. Appellees could have refused to sign until language was included that required the loan proceeds be expended on the property, but were content to merely rely on the statement of Wahlquist that he would stake his professional reputation that appellant would spend the money on the property.

We find that the offer and acceptance sued upon in this matter was not ambiguous and should have been enforced. Accordingly, the ruling of the trial court must be reversed. We disagree with several other findings of the trial court which we will now discuss to avoid a repetition of the error on retrial.

The trial court also found that appellant "endeavored to alter and vary the terms of the written contract . . . reducing the interest rate and the monthly installments under the proposed note evidencing the balance of the purchase price." The introduction of new terms doubtless indicates a

wilingness to negotiate further, but such a response is a counteroffer that must in turn be accepted by the other party. *Rounsaville* v. *Van Zandt Realtors*, 247 Ark. 749, 447 S.W. 2d 655 (1969); *Smith* v. *School District No. 89*, 187 Ark. 405, 59 S.W. 2d 1022 (1933). After appellees had refused to sign the initial papers pertaining to appellant's proposed loan, appellant did suggest new terms to appellees in what could reasonably be considered as an attempt to settle the dispute so that a closing could occur. However, the proposed changes in the contract terms in no way altered the original written agreement since they were not accepted by appellees. Therefore, the proposals are of no significance in this matter.

We think the trial court also erred in finding there was overreaching on the part of appellant and Walhquist, either through ignorance or intention. Appellees had a prominent realty company representing them in the initial stages of the transaction, and there is no persuasive evidence that the transaction was other than one at arm's length. Wahlquist was an agent of appellees and should have not been paired up with appellant by the trial court.

Finally, we think the court erred in inferring that tender of performance was required by appellant before the contract was enforceable. When appellees came to Little Rock in June, they made it very clear that they had no intention of going through with the closing procedures pursuant to the terms of the written agreement. This court has often stated:

> On general principles, whenever the act of one party, to whom another is bound to tender money, services, or goods, indicates clearly that the tender, if made, would not be accepted, the other party is excused from technical performance of his agreement. The law never requires a vain thing to be done.

*Eagle Properties* v. *West & Co.*, 242 Ark. 184, 412 S.W. 2d 605 (1967); *Rich, Executor* v. *Rosenthal*, 223 Ark. 791, 268 S.W. 2d 884 (1954); *Doup* v. *Almand*, 212 Ark. 687, 207 S.W. 2d 601 (1948). Accordingly, appellant had no duty to tender copies of the proposed mortgage and note to appellees and no duty

to tender the payment due at closing in view of appellees' repudiation of the contract.

We need not consider appellant's last point raised on appeal, as it pertains to the refusal of the court to admit certain evidence concerning damages. As the trial court had previously decided that the contract was ambiguous and unenforceable, it was unnecessary for the court to hear evidence as to damages. We presume that this evidence, if properly offered, will be admitted by the trial court on retrial.

Pursuant to Rule 52 of the Arkansas Rules of Civil Procedure, findings of fact made by the trial court shall not be set aside unless clearly erroneous. We think that the findings of the court in this matter were clearly against the preponderance of the evidence and clearly erroneous. Accordingly, we reverse the judgment and remand this cause for further proceedings.

Reversed and remanded.

HICKMAN, J., dissents.