William L. VEREEN, John G. Vereen, and James M. Vereen *v.*
Mark HARGROVE and Joyce Hargrove

CA 02-327                                              96 S.W.3d 762

Court of Appeals of Arkansas
Division I
Opinion delivered January 29, 2003

*Claude W. Jenkins*, for appellants.

*Russell D. Berry*, for appellees.

LARRY D. VAUGHT, Judge. Appellants William Vereen, John Vereen, and James Vereen, the devisees of Mary Louise Wright, deceased, have appealed from the Arkansas County Circuit Court's refusal to terminate a lease whereby appellees Mark Hargrove and Joyce Hargrove leased Mrs. Wright's farm land. Appellees have filed a cross-appeal from the circuit judge's refusal to award them attorney's fees.

On January 14, 1998, Mrs. Wright agreed to lease farm land to appellees for a period of five years, with a five-year option to renew. According to the lease, appellees were to pay Mrs. Wright $6,000 annually, in two equal installments, before January 10 and July 15. Mrs. Wright died on January 29, 1999, and appellant William Vereen was appointed executor of her estate. On June 2, 2000, appellants notified appellees that they were in breach of contract for several reasons and that appellants intended to termi-

nate the lease effective December 31, 2000. Appellants accepted appellees' July 2000 rent payment. In August and October 2000, appellants again notified appellees of their intent to terminate the lease and warned appellees not to plant any crops that would be harvested in 2001. Appellees, however, continued to plant crops in the fall of 2000.

On January 9, 2001, appellants filed a complaint requesting termination of the lease, possession of the farm land, and damages. Appellants alleged that appellees had breached the lease by: (1) using appellants' irrigation well on the farm to provide water to another farm; (2) failing to promptly notify appellants of the breakdown of irrigation equipment and wells; (3) committing waste by constructing a tail-water recovery system and cutting timber on the farm; (4) failing to pay the January 10, 2000, rent on time. Appellants also alleged that appellees had taken advantage of Mrs. Wright's mental weakness caused by her advanced age in obtaining her signature on the lease. Appellees denied being in breach and answered affirmatively that their actions were done with Mrs. Wright's knowledge and consent and in accordance with the lease. They also alleged that the actions for which appellants sought forfeiture of the lease were induced by Mrs. Wright's or appellants' acquiescence and were waived.

After a bench trial, the judge issued a letter opinion on August 14, 2001, stating: "The Court cannot find that [appellees] have breached this lease agreement in any substantive respect. I believe this makes [appellants' attorney] Mr. Berry's procedural objection moot."[1] Appellees then filed a motion for $6,372.22 in attorney's fees and costs pursuant to Ark. Code Ann. § 16-22-308 (Repl. 1999). On September 10, 2001, the judge entered judgment for appellees, again stating: "The Court cannot find that [appellees] have breached this lease agreement in any substantive respect which renders any procedural objection moot." The judge awarded no attorney's fees to appellees.

---

[1] Apparently, the judge was referring to appellants' proffer of evidence showing that, at the time Mrs. Wright signed the lease, her mental condition had deteriorated.

## Arguments

Appellants argue on appeal that the judge erred in failing to consider evidence of the effect that Mrs. Wright's advanced age and mental weakness had on her ability to determine the materiality of appellees' breaches of the lease and that the judge's finding that appellees did not breach the lease in any substantive respect is not supported by the evidence. In their cross-appeal, appellees contend that the judge abused his discretion in failing to award them attorney's fees.

## Standard of Review

The standard that we apply when reviewing a judgment entered by a circuit court after a bench trial is well established. We do not reverse unless we determine that the circuit court erred as a matter of law or we decide that its findings are clearly against the preponderance of the evidence. *Riffle v. United Gen. Title Ins. Co.*, 64 Ark. App. 185, 984 S.W.2d 47 (1998). We view the evidence in the light most favorable to the appellee, resolving all inferences in the appellee's favor. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). Disputed facts and the determination of the credibility of witnesses are within the province of the circuit court, sitting as the trier of fact. *Id.*

## Mrs. Wright's Mental Competence

Appellants contend in their first point on appeal that the trial judge erred in failing to consider evidence that Mrs. Wright lacked mental competence to determine the materiality of appellees' breaches of the lease and to waive them.[2] They also assert that the lease was not supported by consideration. The trial judge, however, did not base his decision on whether a waiver occurred and did not rule on any of these questions — he simply found that appellees had not breached the lease in any substantive

---

[2] Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that she shall forever be deprived of its benefits. *Bharodia v. Pledger*, 340 Ark. 547, 11 S.W.3d 540 (2000).

respect. Without findings by the trial judge on these issues, we cannot address them. It is well settled that the failure to obtain a ruling from the trial court is a procedural bar to this court's consideration of an issue on appeal. *Ghegan & Ghegan, Inc. v. Barclay*, 345 Ark. 514, 49 S.W.3d 652 (2001). Additionally, it is irrelevant whether Mrs. Wright waived appellees' breaches of the lease if no substantive breaches occurred.

## Materiality of the Breaches

The primary issue on appeal, therefore, is the sufficiency of the evidence. Appellants argue that the judge's finding of fact that appellees did not breach the lease in any substantive respect[3] is not supported by the evidence. When performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach. *Zufari v. Architecture Plus*, 323 Ark. 411, 914 S.W.2d 756 (1996). As a general rule, the failure of one party to perform his contractual obligations releases the other party from his obligations. *Stocker v. Hall*, 269 Ark. 468, 602 S.W.2d 662 (1980). Forfeitures, however, are not favored in the law, and in order to be enforced, they must be plainly and unambiguously provided in the contract. *Meers v. Tommy's Men's Store, Inc.*, 230 Ark. 49, 320 S.W.2d 770 (1959). Even when forfeiture is provided for by the express terms of a contract, it is well settled that, before a forfeiture will be declared, strict compliance with every important prerequisite must be shown. *Id.* Forfeitures that are incurred through inadvertence or mistake, without any bad faith on the part of the lessee, will be relieved against one on a showing that no actual damage has been sustained by the lessor. *Id.* *Accord Robinson v. Cline*, 255 Ark. 571, 501 S.W.2d 244 (1973). A relatively minor failure of performance on the part of one party does not justify the other in seeking to escape any responsibility under the terms of the contract; for one party's obligation to perform to be discharged, the other party's breach must be material. *TXO Prod. Corp. v. Page Farms, Inc.*, 287 Ark. 304, 698 S.W.2d 791 (1985). An influential circumstance in the determination of the materiality of a failure fully to perform a contract is the extent to

---

[3] *See Newberry v. McClaren*, 264 Ark. 735, 575 S.W.2d 438 (1978).

which the injured party will obtain the substantial benefit that he reasonably anticipated. *Id.*

In *Holytrent Properties, Inc. v. Valley Park Limited Partnership*, 71 Ark. App. 336, 32 S.W.3d 27 (2000), we held that a lessee could be denied an extension of his lease term if he breached a material covenant of the lease; however, if the breach was immaterial, he could exercise his renewal option. In *Gardner v. HKT Realty Corp.*, 23 Ark. App. 148, 152, 744 S.W.2d 735, 737 (1988), we explained:

> [W]e agree with the chancellor that there are circumstances where equity may grant relief from a delay or failure to give notice of the option to renew a lease. It is a generally accepted rule that the failure of such notice may be excused or relieved against in equity if fraud, accident, surprise, or mistake are shown to have caused the delay or there are other special circumstances warranting the relief. Under this rule, relief is warranted where on the one hand it is shown that the lessor has not changed his position or otherwise been prejudiced by the delay, and on the other that the enforcement of the covenant will result in undue and inequitable hardship to the tenant.

The lease contained the following relevant provisions:

> 3. It is mutually agreed by and between the parties hereto that the rental for the above described lands shall be the total sum of Six thousand and No/100 dollars ($6,000.00) one-half of which shall be due and payable on or before January 10 of each year and the other one-half of which shall be due and payable on or before July 15 of each year during the term hereof. It being recognized the first rental payment wase [sic] paid upon execution of the lease even if it is after January 10.
>
> . . . .
>
> 7. LESSEES covenant and agree to promptly pay the rentals in the time and manner aforesaid, to farm the lands in a good and husbandrylike manner, to neither commit waste nor permit waste to be committed upon the above described lands, to protect the lands from erosion and to use their best efforts to keep all obnoxious weeks [sic] and grasses under control at all times.
>
> . . . .

11. The failure or refusal by LESSEES to pay the rentals at the times and the manner provided by this lease, and the failure of LESSEES to keep and perform their convents [sic] hereunder, shall in either of these events, permit the LESSOR at her option and without any liability on her party [sic] to terminate this lease, re-enter and repossess said property and any crops growing thereon any [sic] cultivate and sell said crops at the expense of the LESSEES. . . .

■ (1) *Late payment of rent.* Appellants contend that appellees' late payment of the January 10, 2000, rent installment was a material breach of the lease. It is true that a lease may validly contain a forfeiture clause for nonpayment of rent; however, to enforce such a clause, the landlord must bring himself strictly within its provisions. *Sells v. Brewer*, 125 Ark. 108, 187 S.W. 907 (1916). *See also Duncan v. Malcomb*, 234 Ark. 146, 351 S.W.2d 419 (1961).

■ Appellees' payment of the January 2000 rent a few days late was not, under the circumstances, a material breach. Appellee Mark Hargrove testified that, after Mrs. Wright's death, appellants never contacted him about where to send the rent payments. Appellee Joyce Hargrove's testimony supports this. Additionally, it is apparent that this late payment was of little consequence to appellants at the time; Mr. Hargrove also testified that, when he met with appellants Bill Vereen and Jim Vereen in March 2000, they did not mention the late payment.

(2) *The purpose of the lease and waste.* Appellants also assert that appellees materially breached the lease by constructing the tail-water recovery system on the property and by using the well on the property to provide water to a neighbor's farm. In doing so, appellants argue, appellees committed waste and used the farm for a purpose not contemplated by the lease.

■ ■ A tenant is impliedly obligated to use leased property in a proper and tenant-like manner, without exposing it to ruin or waste by acts of omission or commission, and not to put it to a use that is materially different from that in which it is usually employed or violative to the spirit and purpose of the lease. *Amisano v. Shaw*, 214 Ark. 874, 218 S.W.2d 707 (1949). Whether a statement in a lease of the use to be made of the premises implies

a covenant not to use the premises for other purposes depends on the intention of the parties. *Id*. A covenant that premises shall be used for a specified purpose does not impliedly forbid their use for a similar lawful purpose that is not injurious to the rights of the landlord. *Id*. *Accord Coulson Oil Co. v. Wilcox*, 12 Ark. App. 111, 671 S.W.2d 198 (1984).

Mr. Hargrove testified that the farm land was in poor shape when appellees leased it and that it lacked sufficient irrigation. He said that, with the help of the soil conservation service, he constructed the tail-water recovery system, which involved the laying of irrigation pipe. He testified that he had spent between $20,000 and $30,000 on the farm's water system. He said that the tail-water recovery system stops erosion and significantly helps the irrigation of the crops and that its use had placed less demand on the farm's well. Mr. Hargrove also testified that crop yields had significantly increased. He stated that the farm is in much better shape and is much more valuable now than it was at the beginning of the lease.

Appellant William Vereen admitted that, when his uncle had farmed this land, a tail-water system had been in use and that appellees had expanded the existing ditch. Charles Cunningham, who designed the tail-water recovery system while working for the United States Department of Agriculture, testified that, at first, the farm was short on water. He said that its existing drainage ditch, which was used in the construction of the tail-water recovery system, was overgrown with weeds, bushes, and small trees. He stated that the clearing of brush and the small amount of land used for the system were well worth its benefits: greater crop yields, less erosion, increased economy, better weed control, and increased land value. We hold that the installation of the tail-water recovery system was easily within the stated purpose of the lease (the growing of crops) and that it did not amount to waste.

As for the use of the farm's well to provide water to a neighbor's farm, Mr. Hargrove explained that, in 1999, he had given a neighbor enough well water for twenty acres in exchange for enough water for forty acres, which placed less demand on the farm well. Clearly, the overall result of this exchange was an increased amount of water for the farm at no additional cost.

Because irrigation is a necessary part of the growing of crops and the exchange did not injure appellants, we hold that appellees did not violate the purpose of the lease or commit waste in this regard.

Accordingly, we cannot say that the judge erred in finding no substantive breach of the lease and affirm his refusal to declare a forfeiture of the lease.

*Attorney's Fees*

In their cross-appeal, appellees argue that the trial judge abused his discretion in failing to award them attorney's fees. The general rule in Arkansas is that attorney's fees are not awarded unless expressly provided for by statute or rule. *Security Pac. Housing Servs., Inc. v. Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993). Arkansas Code Annotated section 16-22-308 (Repl. 1999), provides that a reasonable attorney's fee may be awarded to the prevailing party in certain civil actions, including those for breach of contract. This statute permits an award of attorney's fees in an action involving the breach of a lease. *See Sunbelt Exploration Co. v. Stephens Prod. Co.*, 320 Ark. 298, 896 S.W.2d 867 (1995). Whether to award attorney's fees under this statute is a matter within the trial judge's discretion. *Cumberland Fin. Group, Ltd. v. Brown Chem. Co.*, 34 Ark. App. 269, 810 S.W.2d 49 (1991). The trial judge's decision will not be reversed absent an abuse of that discretion. *Little Rock Wastewater Util. v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995). However, a clearly erroneous interpretation or application of a law or rule will constitute a manifest abuse of discretion. *Id.*

Here, the trial judge did not provide an explanation for his failure to award attorney's fees to appellees. When the trial judge's order gives no explanation that can be founded in the proper application of the law, it is necessary to remand for reconsideration. *Little Rock Wastewater Util. v. Larry Moyer Trucking, Inc., supra.* Because we do not know the reason that the trial judge declined to award attorney's fees, we remand for him to consider whether to make such an award.

Affirmed on direct appeal; remanded on cross-appeal.

BIRD and BAKER, JJ., agree.