SOUTHWAY CORP. and Newman McGee, Jr. *v.*
METROPOLITAN REALTY and DEVELOPMENT CO., LLC

CA 04-559 206 S.W.3d 250

Court of Appeals of Arkansas
Substituted Opinion on Denial of Rehearing delivered
April 6, 2005

52

*Schwander Law Firm*, by: *L. Howard Schwander, III*, for appellants.

*Eichenbaum, Liles & Heister, P.A.*, by: *Christopher O. Parker*, for appellee.

JOHN MAUZY PITTMAN, Chief Judge. Appellants Southway Corp. and Newman McGee, tenants of commercial property in North Little Rock, appeal from a summary judgment in favor of their landlord, appellee Metropolitan Realty & Development, LLC. The summary judgment declared that the parties' lease contract was unambiguous, that appellants had breached the lease, and that appellee was entitled to possession of the property and treble damages. On appeal, appellants argue that the trial court erred in granting summary judgment and in awarding appellee treble damages. We affirm.

Appellee leased its property to Paul Morriss (not a party herein) in 1986 for use as a bowling facility. In 1995, the lease was assigned to appellants and provided in pertinent part that: 1) rent was due on the first of each month; 2) the lessee must make a once-a-year payment to lessor of a portion of its gross sales; 3) the lessee must pay all ad valorem property taxes by October 1 of each year; 4) an "event of default" would occur if the lessee failed to pay rent within fifteen days after written notice; 5) upon default, the lessor could immediately terminate the lease and retake possession of the property; and 6) that "time is of the essence of this Agreement."

On December 17, 2002, appellee sued appellants in Pulaski County Circuit Court, citing appellants' failure to remit a percentage of their gross sales as required by the lease. Appellee further averred that appellants had been chronically late with their rent by virtue of "riding" the grace period, *i.e.*, not paying the rent until they had received written notice that it was past due. On February 3, 2003, the parties settled the lawsuit and executed a written agreement that changed the lease in several respects, including the imposition of a $200 late-payment charge, the redefining of an "event of default" as the failure to pay rent within five days after notice rather than fifteen, and the addition of the following provision:

> In the event that Lessee fails to timely perform any obligation (whether monetary or non-monetary) under the Lease, and within the previous six (6) months Landlord has given Lessee Notice as set out above of a previous failure to perform by Lessee and Lessee has in fact failed to timely perform, such second failure shall automatically be deemed an event of Default under this section 10.1, and the Landlord may, without any additional Notice whatsoever, thereafter treat any such failure to timely perform as an Event of Default, and shall be entitled to take any and all actions available to Landlord at law or equity, or otherwise, including undertake any remedy available to Landlord under this Lease.

Appellee describes the above quoted section as a "one-bite-at-the-apple" provision, meaning that, once appellants were late with any payment, a second late payment within a six-month period would result in an automatic default, without the need for notice.

After the settlement agreement was executed, dealings between the parties proceeded without controversy until October 1, 2003. On that date, appellants were obligated to pay ad valorem taxes on the property, but they failed to do so, despite two faxed reminders from appellee in the preceding months. On October 2, 2003, appellee faxed appellants a letter, stating:

> In accordance with the terms of our February 3, 2003 Settlement Agreement, this letter is our notice to you that we have not received your payment for real estate taxes as set forth in our Lease Agreement. . . . Your failure to pay within five (5) days after this notice (October 7, 2003) will result in an Event of Default. Further, your failure to timely perform any obligation during the next six-month period will be deemed a second failure to perform and an Event of Default, without additional notice.

Despite appellants' receipt of the above letter, they failed to pay the November rent when it was due on November 1. As appellants would later explain in affidavits, their courier, Mary Scott, attempted to deliver the November 1 rent payment to appellee on October 31. However, Scott did not feel well and ran into traffic problems and so did not complete the delivery. Scott then attempted to deliver the rent to appellee on Saturday, November 1, but appellee's office was closed. Scott did not try to deliver the rent on Monday, November 3, because she was sick. She delivered the rent on November 4, but it was refused by appellee. At 11:45 a.m on November 4, appellee faxed appellants a notice, informing them that their failure to timely pay the rent on November 1, after having failed to timely pay the property taxes on October 1, put them in default. Thereafter, on November 18, 2003, appellee filed the present unlawful-detainer action to remove appellants from the premises.

On December 18, 2003, appellee filed a motion for summary judgment and argued that the provision in the settlement agreement, quoted above, clearly provided that, once appellants exhausted their one chance to be late by failing to timely pay the ad valorem taxes in October, appellants' second untimely action within the six-month period resulted in a default without further notice. Following a hearing, the trial court entered an order of summary judgment, declaring that the relevant terms and conditions of the lease were unambiguous; that appellee's termination of the lease was the result of appellants' material breach in failing to pay the November rent when due and was consistent with the terms of the lease; that appellants' failure to vacate the premises by November 13, 2003, was a willful unlawful detainer; and that appellee was entitled to $33,129.60 as "statutory damages," presumably treble damages pursuant to Ark. Code Ann. § 18-60-309(b)(2) (Repl. 2003). Appellants now appeal from that order.

Our standard of review is well established. In summary-judgment cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Holytrent Properties, Inc. v. Valley Park Limited Partnership*, 71 Ark. App. 336, 32 S.W.3d 27 (2000). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Id.* All proof submitted must be viewed in a light most favorable to the party

resisting the motion, and any doubts and inferences must be resolved against the moving party. *Id.*

The construction and legal effect of a written lease contract are to be determined by the court as a matter of law, except where the meaning of the language depends on disputed extrinsic evidence. *See Holytrent Properties, Inc., supra.* When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id.*

Appellants argue first that the trial court erred in granting summary judgment because the parties' lease — the settlement provision in particular — is ambiguous. The trial court apparently interpreted the provision at issue just as appellee did: when appellants failed to timely pay the rent on November 1, and within the previous six months had received notice of a prior failure to perform in October, then appellants' failure to timely pay the November rent resulted in an automatic default. Appellants, however, argue that the provision is susceptible to two other reasonable interpretations and is thus ambiguous. *See generally Anderson Gas & Propane v. Westport Insurance Corp.*, 84 Ark. App. 310, 140 S.W.3d 504 (2004) (holding that language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation).

Appellants' first alternative interpretation is that the provision permits automatic default only after the third late payment rather than the second. Appellants base this interpretation on the provision's language that, after the lessee's second late payment, the landlord may *thereafter* treat any *such* failure to perform as an event of default. We reject this interpretation for two reasons. First, we do not address arguments that are made for the first time on appeal. *Sweeden v. Farmers Insurance Group*, 71 Ark. App. 381, 30 S.W.3d 783 (2000). Appellants did not urge this interpretation below. In fact, they submitted, in response to the summary-judgment motion, appellant Newman McGee's affidavit, which expressly contradicted this interpretation, to wit:

> It was my understanding at the time of the execution of the Settlement Agreement in February 2003, and it continues to be my understanding and belief, that the "no" notice provision was simply a provision which allowed accelerated termination of the Lease without notice *in case of a second event of default.*

(Emphasis added.)

 Secondly, appellants' interpretation is irreconcilable with language in the provision that a "*second* failure shall automatically be deemed an event of Default." (Emphasis added.) A construction which neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions. *North v. Philliber*, 269 Ark. 403, 602 S.W.2d 643 (1980). Further, the intention of the parties is to be gathered not from particular words and phrases but from the whole context of the agreement. *Id.*, citing *Fowler v. Unionaid Life Insurance Co.*, 180 Ark. 140, 20 S.W.2d 611 (1929). Moreover, the interpretation of a contract must be upon the entire instrument and not merely on disjointed or particular parts of it. *See id.* If, as appellants suggest, an automatic default can only occur upon a third late payment, then this language regarding a default upon a second failure is rendered meaningless. Appellants' alternative interpretation is therefore not reasonable in light of the provision's language as a whole.[1]

Appellants' second alternative interpretation concerns the opening clause of the settlement provision, which sets forth the condition precedent for application of the automatic-default mechanism, *i.e.*, that the lessee must "fail to timely perform any obligation . . . under the Lease." Appellants contend that this clause may be interpreted in such a way that they did not "fail to timely perform an obligation" because they made their November rent payment within the five-day "cure period."

 According to appellants, the provision may be interpreted to say that any payment made within five days after receiving notice, *i.e.*, within the "cure period," would be timely, and no default could be declared. However, appellants' interpretation would result in unlimited cure periods, a situation that the settlement provision is clearly designed to avoid. Further, and more importantly, appellant's interpretation would render the entire settlement provision superfluous. Under appellants' reading, a default may be automatically declared only when a lessee "fails to perform" by failing to pay within the cure period. However, the

---

[1] Appellants also question why, if appellee truly believed that notice was only required once within a six-month period, it sent a second notice to appellants in November. This argument is not well taken because the second notice referred to is a notice that appellants were already in default.

parties did not need to enter into the settlement provision to accomplish that end; the lease contract already provides that just one failure to perform within the cure period would constitute a default. The settlement provision is obviously directed at a lessee's "second failure," which can only logically mean a second failure to pay on the date mandated by the contract. Thus, the only reasonable interpretation of the settlement provision is that, once appellants were given notice in October of their first failure to perform in a timely fashion, their second failure to perform, *i.e.*, to pay the rent on the November 1 date mandated in the contract, would constitute an automatic default.[2] As stated earlier in this opinion, it is a well settled rule in construing a contract that the intention of the parties is to be gathered not from particular words and phrases but from the whole context of the agreement, *North v. Philliber, supra*, and the interpretation of a contract must be upon the entire instrument and not merely on disjointed or particular parts of it. *See id.*

■ Because appellants' alternative interpretations, when considered in the context of the provision as a whole, are not reasonable alternatives to the one employed by the trial court, we affirm the trial court's ruling that the parties' lease contract was not ambiguous.

Appellants argue next that summary judgment was inappropriate because appellee, by being closed on the date that the rent was due (Saturday, November 1), was responsible for appellants' failure to timely perform. The settlement agreement defines payment of rent as actual receipt by the landlord. Therefore, according to appellants, they regularly hand-delivered the rent to appellee. They claim that they were thwarted from making a timely payment when they attempted to deliver the rent on November 1 and

---

[2] The dissent misunderstands our holding by stating that "the majority presumes that an event of default occurred in October regarding the payment of taxes." No event of default occurred in October; rather, a "failure to perform" occurred in October when appellants failed to pay the ad valorem taxes on October 1. The "event of default" occurred when, after having failed to timely perform in October, appellants failed to timely perform for a second time in November by not paying the rent on November 1.

As for the dissent's footnote referencing a dictionary definition of "default," however helpful a dictionary definition may be in generic situations, the parties in this case contractually agreed that a second failure to timely perform would automatically be deemed an "event of default."

appellee was closed. They cite *Meers v. Tommy's Men's Store*, 230 Ark. 49, 320 S.W.2d 770 (1959), for its holding that equity relieves against a forfeiture where no real fault has been committed or where the breach was induced or waived by the landlord's conduct.

Appellants' argument is not persuasive. Appellants' continuing failure to tender the rent on the morning of November 3, which was the first business day after November 1, belies their claim that appellee induced the late payment. Our supreme court has held that, when rent is due on a weekend, a tenant's tender of payment on the following Monday is sufficient. *See Dean v. Freeze*, 213 Ark. 264, 209 S.W.2d 876 (1948) (rent was due on a Sunday). However, it is undisputed that appellants tendered no rent until the late morning of November 4. They make no argument and present no proof to show that appellee did anything to prevent their paying the rent on November 3 or earlier in the day on November 4. In light of these undisputed facts, we find no reason to reverse the summary judgment on this point.

Appellants also argue that their breach, if any, was not material, and equity should avoid a forfeiture of the lease. They cite *Vereen v. Hargrove*, 80 Ark. App. 385, 96 S.W.3d 762 (2003), for the proposition that a tenant's relatively minor failure of performance does not justify a landlord trying to escape the contract. In *Vereen*, the Hargroves leased farm land from Mrs. Mary Louise Wright, and their contract called for them to make two yearly rent payments, one in January and one in July. Mrs. Wright died approximately one year into the lease. In June 2000, her devisees, the Vereens, notified the Hargroves that they intended to terminate the lease for, *inter alia*, late payment of the January 2000 rent. Our court held that the late payment was not a material breach:

> Appellees' payment of the January 2000 rent a few days late was not, under the circumstances, a material breach. Appellee Mark Hargrove testified that, after Mrs. Wright's death, appellants never contacted him about where to send the rent payments. Appellee Joyce Hargrove's testimony supports this. Additionally, it is apparent that this late payment was of little consequence to appellants at the time; Mr. Hargrove also testified that, when he met with appellants Bill Vereen and Jim Vereen in March 2000, they did not mention the late payment.

*Id.* at 393, 96 S.W.3d at 766.

▮ The case at bar is in marked contrast to *Vereen*. While it is true that, like the tenants in *Vereen*, appellants' rent was only a few days late, there is no showing, as there was in *Vereen*, that the landlord failed to notify the tenants of where to send the rent. Further, there is ample, undisputed evidence that a timely remittal of each rent payment was important to appellee. Appellee initially sued appellants to redress their untimely payments under the lease and thereafter amended the lease to induce appellants to make timely payments, manifesting an intent thereafter to suffer only one late payment in each six-month period. Additionally, appellants' failure to pay the November rent was not an isolated incident, as the late payment in *Vereen* appears to have been. Appellants had a history of late payments, and in fact had been late with a payment just the previous month. In light of these factors, we believe that this case can be distinguished from *Vereen* and that the trial court correctly ruled that, as a matter of law, appellants' breach was material.[3]

▮ Appellants further rely on the well known maxims that forfeitures are not favorites of the law and that every effort should be made to avoid a forfeiture. *See generally Meers v. Tommy's Men's Store, supra; Vereen v. Hargrove, supra*. It is true that, even where a lease provides for a forfeiture in the case of untimely payment of rent, a forfeiture incurred through inadvertence or mistake, without bad faith on the part of the lessee, will be relieved on a showing that no actual damage has been sustained by the lessor. *Vereen v. Hargrove, supra*. However, no inadvertence or mistake on appellants' part can be shown from the undisputed facts of this case. There is an absence of any attempt by appellants to pay the rent on Monday, November 3, or on the morning of Tuesday, November 4. Further, appellants' failure to make a timely November rent payment came within a month of having been warned that such a late payment would result in a default.

In light of the foregoing, we affirm the trial court's grant of summary judgment to appellee.

We turn now to appellants' argument that they should not be required to pay treble damages to appellee. The trial court's

---

[3] We also note that, in McGee's affidavit, he acknowledged that appellee has "made much ado" regarding the time periods within which rent was paid.

order did not expressly award treble damages, but both parties agree that they were imposed. The order refers to "statutory damages," and the amount awarded — $33,129.60 — is approximately three times the amount of rent that would have been payable between mid–November 2003 and the date of the summary judgment hearing on January 30, 2004 (rent was $4,872 per month). It thus appears that the court assessed treble damages as provided in Ark. Code Ann. § 18-60-309(b)(2):

> When the property sought to be recovered is used for commercial or mixed residential and commercial purposes, the plaintiff shall receive liquidated damages at the rate of three (3) times the rental value per month for the time that the defendant has unlawfully detained the property.

Multiple-damage statutes, being penal in nature, must be strictly construed. *Heral v. Smith*, 33 Ark. App. 143, 803 S.W.2d 938 (1991). Treble damages under section 18-60-309 are to be awarded only where the trial court has found a willful or wrongful holding over. *Harvill v. Bevans*, 52 Ark. App. 57, 914 S.W.2d 784 (1996). Where the holding over by the tenant is under a bona fide belief that he has the right to do so, even though he is mistaken, the holding over is not willful, and multiple damages should not be awarded. *See Lesser-Goldman Cotton Co. v. Fletcher*, 153 Ark. 17, 239 S.W. 742 (1922) (decision under prior, similar statute).

The trial court in the case at bar ruled that appellants' failure to vacate the premises was willful. Appellants argue that there was no evidence that their holding over was willful or wrongful, and, relying on the arguments that they made above seeking reversal of the summary judgment, they contend that their holding over was predicated on a good–faith belief that they were not in default.

The question of whether a trial court has erred in either awarding or failing to award multiple damages in an unlawful detainer action has been the subject of several cases from this court and the supreme court. *See, e.g., M.L. Sigmon Forest Products v. Scroggins*, 250 Ark. 385, 465 S.W.2d 673 (1971); *Johnson v. Taylor*, 220 Ark. 46, 246 S.W.2d 121 (1952); *Lesser-Goldman Cotton Co. v. Fletcher, supra; Harvill v. Bevans, supra.* In *Johnson v. Taylor, supra*, no multiple damages were awarded where the appellant had reasonable grounds to believe that he was entitled to hold over under an

oral option to renew when there was some evidence that the landlord had agreed to an oral lease and that appellant had acted on the advice of an attorney. In *Lesser-Goldman Cotton Co. v. Fletcher, supra*, no multiple damages were awarded where the tenant reasonably, though mistakenly, believed that a cancellation of lease had been withdrawn. In *Harvill v. Bevans, supra*, multiple damages were not awarded against a tenant who refused to vacate upon notice from the appellee where the tenant justifiably believed that a bank rather than the appellee was the real party in interest.

In *M. L. Sigmon Forest Products, supra*, however, the supreme court held that multiple damages should have been imposed where the tenant, whose two-year lease expired in January 1969, held over under a claim that he was entitled to six months' notice of termination of the lease. The supreme court held that the tenant was not justified in his belief and that the tenant's merely saying that he thought he had the right to possession of the premises until he received six months' notice did not establish the bona fide belief required by law.

We believe that the situation in the case at bar is like the one in *Sigmon, supra*, where the tenant was not justified in his belief that he was entitled to hold over. The settlement provision allowing for an automatic default upon a second failure to timely perform was not ambiguous, as we have held. Further, appellants were told by appellee in the October 2 letter that, if they performed again in an untimely manner, a default would be declared. Despite this warning, they did not tender the November rent until November 4, and then attempted to assert, without a reasonable basis therefor, that their payment was timely.

For the reasons stated, we affirm the trial court's grant of summary judgment and the imposition of treble damages.

Affirmed.

GLADWIN, ROBBINS, GLOVER, and NEAL, JJ., agree.

BAKER, J., dissents.

KAREN R. BAKER, Judge, dissenting. The majority's holding is based on the presumption that an event of default occurred prior to the dispute over the timeliness of the November

rent payment.[1] The majority states that the "trial court apparently interpreted the provision at issue just as appellee did: when appellants failed to timely pay the rent on November 1, and within the six months had received notice of a prior failure to perform in October, then appellants' failure to timely pay the November rent resulted in an automatic default." Thus the majority's interpretation is based upon the premise that an event of default occurred in October; however, that is the factual issue that must be determined in this case. The necessity of resolving this question renders the matter inappropriate for summary judgment.

At issue is whether payment within the five-day cure period is a failure to timely perform resulting in an "event of default." The notice letter of October 2, 2003 states that, "Your failure to pay within five (5) days after this notice . . . *will result in an Event of Default*." (Emphasis added.) The notice letter does not say that your failure to pay the taxes on October 1, 2003, has resulted in an event of default pursuant to our settlement agreement. The language in the notice letter indicates the possibility that a default will occur if appellants fail to pay the taxes within five days of the notice. This language indicates that there is no event of default if payment is made within the five days.

Nothing in the record indicates that appellants failed to pay the taxes within the five days of the receipt of the notice. In fact, appellee's complaint upon which the summary judgment was granted does not even allege that appellants failed to pay the taxes within the five-day period.

The language of the notice letter is entirely consistent with Appellants' argument that when they cured the first late payment, no default occurred. The majority rejects appellants' argument saying that appellants did not urge this interpretation below. However, the citation to the record by appellants in their brief includes the following argument from their response to the motion for summary judgment filed by appellee, plaintiff below:

> The final Paragraph of Section 10.1, the paragraph upon which the Plaintiff bases his whole case, clearly *follows*, and falls within, the

---

[1] The majority footnotes that no default occurred in October, rather a failure to perform occurred in October. Black's Law Dictionary, 6th edition, defines "default" as "An omission of that which ought to be done . . . . Specifically, the omission or *failure to perform* a legal or contractual duty." (Emphasis added.)

"Notice requirement" part of the section. A reading of that final paragraph confirms that it is a specific "notice" provision, that states the circumstances under which a notice is *not* required. The final Paragraph sets out a necessary precondition, that being a factually confirmed failure to timely perform, at which point a subsequent such failure triggers a default for which notice need not be sent. However, "failures to timely perform" are simply not defined in this paragraph because this is not a *default defining* Paragraph. This Paragraph is part of the *notice* provisions. The *default defining* part of Section 10.1 is found a full page before.

After having first misconstrued the *nature* of this provision, the Plaintiff now goes on to misconstrue the meaning and substance of said provision. They accomplish this misconstruction by interpreting this provision to apply *only* to what is contained within Section 10.1 of the February 2003 Settlement Agreement. By the Plaintiff's reading, the only precedent occurrence to which this "no notice" provision can apply, are Lessee obligations satisfied within the cure period.

Appellants' Argument, p. 24, citing addendum 228-233.

Appellants' argument does not specifically address the majority's presumption that a default occurred before the November dispute. That is understandable since the appellants' argument presupposes that there is no default if a payment is made within the cure period. The majority quotes from appellant Newman McGee's affidavit and adds emphasis to appellant's understanding that the " 'no' notice provision was simply a provision which allowed accelerated termination of the Lease without notice *in case of a second event of default.*" (Emphasis added by the majority). The majority ignores the fact that the appellants are saying that the five-day cure period is available for the November rent payment because no event of default occurred in October. No one alleges that appellants failed to pay the taxes within the five-day cure period in October, and there is no evidence that they did not pay within that period.

So the fact question in this case is whether an event of default occurred prior to the November dispute that negated the notice requirement. The majority presumes that an event of default occurred in October regarding the payment of the taxes making the delay of the November rent payment a second failure to timely perform. The majority asserts that "under appellants' reading a

default may be automatically declared only when a lessee 'fails to perform' by failing to pay within the cure period." However, that is not what appellants argue. Appellants actually argue that before the "no notice" provision can be applied, there must first be a factually confirmed failure to timely perform that results in an event of default. Given that the letter from appellee specifically stated that a failure to pay within five days of the notice would be an event of default, and there is no allegation nor evidence that appellants failed to pay within the five days, I cannot say that as a matter of law an event of default occurred prior to the November dispute.

"Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law." *Wallace v. Broyles,* 331 Ark. 58, 66, 961 S.W.2d 712 (1998) (*Wallace I*) (citing *Pugh v. Griggs,* 327 Ark. 577, 940 S.W.2d 445 (1997)). The standard is whether the evidence is sufficient to raise a fact issue, not whether the evidence is sufficient to compel a conclusion. *Id.* (citing *Caplener v. Bluebonnet Milling Co.,* 322 Ark. 751, 911 S.W.2d 586 (1995)). A fact issue exists, even if the facts are not in dispute, if the facts "may result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law. . . [I]n such an instance, summary judgment is inappropriate." *Wallace v. Broyles,* 332 Ark. 189, 961 S.W.2d 712 (1998) (supplemental opinion denying rehearing) (*Wallace II*).

On review, this court should determine whether summary judgment was appropriate based on whether the evidence presented in support of summary judgment leaves a material question of fact unanswered. *Wallace I, supra.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Wallace I, supra.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.* (citing *Angle v. Alexander,* 328 Ark. 714, 945 S.W.2d 933 (1997)). *Ultracuts Ltd. v. Wal-Mart Stores, Inc.,* 343 Ark. 224, 231, 33 S.W.3d 128, 133 (2000). Furthermore, the object of summary-judgment proceedings is not to try the issues, but to determine whether there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Flentje v. First National Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000).

Although the majority presumes a default occurred prior to the November controversy, the fact question at issue is whether

such a default in fact occurred triggering application of the "no notice" automatic default provision. Appellants argue that no default occurred prior to November so the automatic default provision had no application. Since Appellants' broad construction of the lease is as valid an interpretation as the appellees' narrow construction, this case should be remanded for trial.

Accordingly, I dissent.