BUSH *v.* BOURLAND.

4-7139                                                  174 S. W. 2d 936

Opinion delivered November 1, 1943.

*Harper & Harper*, for appellant.

*Hardin, Barton & Shaw*, for appellee.

ROBINS, J. Appellants, George A. Bush and C. G. Loube, by this appeal seek to reverse the decree of the lower court, which awarded to appellees, Mrs. George Shankle and James Fagan Bourland III, possession of the first floor of a building in the business district of Fort Smith owned by appellees, and directed appellants to surrender the possession of that portion of said building which they were occupying as subtenants of Harold J. Ross.

On June 10, 1942, appellee, James Bourland, as agent for the other appellees, and Harold J. Ross, entered into a written lease contract by which said appellee rented to Ross "The first floor of the building located on parts

of lots four and five in block twenty-nine, city of Fort Smith, . . . except . . . a space twelve feet wide located at the north end of said building used as a ramp for access to the second floor of said building." The term of the lease was for the duration of the present war between the United States and Germany, Italy and Japan. A weekly rental of $100 for the lower floor was fixed in the lease, which further provided that the lessee would occupy the second floor of the building at an additional rental of $125 per month beginning on September 10, 1942. The lease contained this stipulation: "And it is further agreed that in case of failure to pay the rent aforesaid or in default of the performance of any of the agreements herein contained by the lessee to be kept and performed, the lessor may terminate this lease and it shall be lawful for the said lessor to enter the said premises and to remove all parties therefrom, said lessee hereby expressly waiving the service of notice to quit, and a demand for the possession of the premises, without any notice to quit or to deliver possession." Ross entered the premises, which he used as an amusement parlor, and subrented a portion thereof to appellants, who operated a refreshment concession therein.

Ross failed to pay the appellees rent in accordance with the terms of the lease, and, on September 14, 1942, appellee, James Bourland, as agent for the other appellees, gave written notice to appellants to vacate said property, setting forth therein that, by reason of the failure of lessee to pay the rent and otherwise perform the terms of the lease, the lessors had exercised their right to terminate the same. On September 23, 1942, appellees caused to be served upon appellants a notice to quit.

Unlawful detainer proceedings were thereafter instituted in the circuit court by appellees against appellants, and bond to obtain possession of the premises was executed by appellees, as required by law. Appellants filed answer, cross-complaint and motion to transfer to equity in which they alleged that they had, under an oral agreement, rented from H. J. Ross, for the duration of the

war, a portion of the premises leased by Ross from appellees, for the purpose of operating a food and refreshment concession therein, that they had taken possession of said premises in pursuance of the said agreement with Ross, and that the cancellation of the lease from appellees to Ross was collusive and fraudulent. Appellants prayed that appellees be enjoined from cancelling said lease with Ross, and that they be required to specifically perform same.

Appellants' motion for transfer to equity was granted and the cause was heard by the chancellor upon testimony of witnesses taken in open court. The chancery court found that Ross failed to pay the rents in accordance with the terms of the lease, that appellees, in good faith, exercised their right to terminate the lease, and that thereby all rights of appellants as to the use and occupancy of the premises were terminated. The lower court made a specific finding "that there was not any collusion or fraud . . . in connection therewith." Thereafter appellants filed motion for new trial; and on hearing of said motion it was stipulated that shortly after the decree was rendered appellees executed a new lease covering part of the property originally demised to Ross, without exacting from him full payment of his indebtedness to appellees. This motion for new trial was overruled.

A subtenant derives all his rights as to occupancy of the rented premises from the contract between the landlord and the principal tenant, and the subtenant's rights, in the absence of a special agreement between him and the landlord, cannot rise any higher than those of the principal tenant. When, in pursuance of the provisions of a lease between the landlord and the tenant, the right of occupancy of the principal tenant has been terminated, the right of occupancy of the subtenant is at the same time automatically ended.

The rule is thus stated in 32 Am. Jur., p. 344: "Since a subtenant holds the premises subject to the performance of the terms and conditions impressed upon the

estate by the provisions of the original lease, his rights are generally held to be terminated when the original lessor declares a forfeiture of the original lessee's term based upon the latter's nonperformance of obligations imposed on him.''

In the case of *Hawley Corporation* v. *West Virginia Broadcasting Corporation,* 120 W. Va. 184, 197 S. E. 628, 118 A. L. R. 120, the Supreme Court of West Virginia said: ''Upon forfeiture of the principal lease, plaintiff (the lessor) had the exclusive right to affirm or disaffirm the sub-lease. . . . The notice, in effect, informed defendant that the sublease was disaffirmed. Upon that disaffirmance defendant (sublessee) had no right of occupancy except as plaintiff willed.''

It is urged by appellants that the cancellation of the lease was, as between the landlord and the principal tenant, collusive and merely a fraudulent method of cancelling the sublease of appellants wrongfully. The undisputed testimony established that Ross failed to pay a greater part of the rent due from him and that appellees declared a forfeiture of the lease, as they were authorized to do by its terms. Fraud is never presumed and the burden of showing the existence of facts which establish fraud is upon the one who asserts fraud as a ground of relief.

In the case of *Hempstead* v. *Johnston,* 18 Ark. 123, (Headnote 13), 65 Am. Dec. 458, this court said: ''It is equally a rule in courts of law and courts of equity, that fraud it not to be presumed; but it must be established by proof.'' ''Fraud must be proven; circumstances of mere suspicion, leading to no certain result, are not sufficient ground to establish it.'' *Erb* v. *Cole & Dow,* 31 Ark. 554, (Headnote 2). ''To establish fraud, evidence must be clear and convincing.'' *Kleiner* v. *Longrader,* 189 Ark. 1171, 75 S. W. 2d 1006. ''Fraud . . . is never presumed, but must be affirmatively proved by testimony which is clear and convincing.'' *Green* v. *Bush,* 203 Ark. 883, 159 S. W. 2d 458.

It is not contended by appellants that there was any direct evidence by which the existence of the collusion

and fraud alleged as a defense by appellants was shown, but it is insisted that this defense was established by circumstances in the case—chiefly by the fact that, after the court had decided in favor of appellees and before appellants filed their motion for a new trial, appellees entered into a new lease with Ross covering part of the property originally demised to Ross without requiring him to pay the balance that he owed. When the court gave appellees possession of the property they had a right to rent it to anyone whom they might select as a tenant, and the fact that, after the lower court awarded possession to the appellees, they saw fit to make a new lease contract with Ross, does not in itself prove the existence, at the time the original lease was canceled, of the *mala mens* which was a necessary ingredient of the alleged fraud and collusion.

It is further urged by appellants that because, after appellees had brought their unlawful detainer proceedings and had given bond to obtain possession of the premises, they permitted appellants to leave some of their property in the building under a written agreement which expressly stated that the legal status of the parties should not be affected thereby, this amounted to a waiver of any claim on the part of appellees that the possession of appellants was unlawful. This agreement was manifestly for the benefit and convenience of appellants, and under its express terms did not operate as a waiver on the part of appellees of their right to the possession of the property.

Under the established rule of this court the decree of the chancellor must be affirmed, unless it appears that such decree is against the preponderance of the testimony. *Benton* v. *Southern Engine & Boiler Works,* 101 Ark. 493, 142 S. W. 1138; *Dyer* v. *Dyer,* 116 Ark. 487, 173 S. W. 394; *Monroe Hardware Co.* v. *Tucker,* 123 Ark. 619, 185 S. W. 459; *Morrow* v. *Merrick,* 157 Ark. 618, 249 S. W. 369; *Venable* v. *Vance,* 167 Ark. 678, 266 S. W. 70; *Neil* v. *Neil,* 178 Ark. 1199, 10 S. W. 2d 4. We have carefully reviewed the record, and we do not find that

the decree of the lower court was against the weight of the testimony. The decree appealed from is accordingly affirmed.