Franklin H. JONES, Jr. et al *v.* INNKEEPERS, INCORPORATED, et al

CA 83-325                                             676 S.W.2d 761

Court of Appeals of Arkansas
Division II
Opinion delivered October 17, 1984

*Cearley, Mitchell & Roachell,* by: *Robert M. Cearley, Jr.,* for appellants.

*Wilson, Engstrom & Vowell,* by: *Stephen Engstrom,* for apellees.

GEORGE K. CRACRAFT, Chief Judge. Rachel B. Mc-Millen brought an action in the circuit court of Pulaski County against J. Dan Baker and Innkeepers, Inc. (referred to collectively as "Baker") for unpaid rent under a five year lease. Baker cross-complained against Franklin Jones, Jr. and Hotel Venture, a Louisiana partnership, (referred to collectively as "Jones") alleging that Jones was liable as assignee of the lease. The trial court sitting without a jury found Baker liable for the rent and granted Baker's cross-complaint against Jones for the rent which amounts to $40,500. Baker does not appeal.

Jones brings this appeal contending that the trial court erred in holding him liable because the assignment of the lease did not meet the requirements of the Statute of Frauds and also was void for lack of mutuality. We find no merit in these arguments but do agree that the trial court erred in not considering the issue of Baker's duty to mitigate the damages.

The testimony on behalf of McMillen established that Baker was the owner and operator of the Sheraton Hotel in Little Rock. In April 1979 Baker leased from McMillen a vacant lot adjacent to the hotel for a term of five years at a monthly rental of $1,125. The lease also granted Baker an option to purchase the lot for $135,000 at the expiration of the lease. Baker obtained this lease and option for the purpose of development or sale of the property. However, the property was not used for any purpose and has remained vacant from the date of the exeution of the lease through the date of the judgment.

In the latter part of 1979 Baker and Jones negotiated a sale of the Sheraton Hotel. According to Baker these negotiations were for the sale of the hotel and all of its assets, including the lease in issue. Baker and his attorney testified that although the contract of sale did not specifically describe the leasehold property as was intended, the contract did refer to a leasehold interest with option to purchase. They testified that all parties contemplated that the McMillen lease would be transferred to Jones as a part of the whole transaction. They testified that at closing they had presented a document for Jones' signature in which Jones would assume all obligations under the lease with McMillen, but Jones' attorney argued that they had agreed only to an assignment and the lesser obligations it would impose. After some discussion it was agreed that Jones would only be required to accept an assignment of that lease. They testified that Jones' attorney then prepared a written assignment which Baker signed and returned to Jones' attorney who recorded it and delivered it to Jones. Baker's witnesses testified that in April 1980 one payment in the amount of $1,125 was received by McMillen from Jones and that he failed to

make any further payments and explained that Jones had decided that he did not want the property.

Baker testified that after Jones defaulted he wished to preserve the rights under the option by making the required monthly payments of rent but was advised by his attorney that unless the lease containing the option was reassigned to him he would have no rights in the option. On October 10, 1980 Baker's attorney sent a reassignment deed to Jones with a request that he execute and return it. Jones refused.

Jones and his associates testified that throughout the negotiations there were no discussions of the assignment of the lease in question and that the first he heard of it was at the meeting at which the sale was consummated. Jones testified that he first refused to sign the assumption agreement but after discussing it with his associates he had determined that he wanted to look at the property to determine whether he would assume the lease. He stated that at the time the separate assignment was prepared it was his belief that he was to look at the property to see if he wanted to accept the assignment. He stated that one rent payment had been made on his behalf but he did not know why, and that upon learning of it he told his employees to make no more payments. He further testified that when McMillen's agent called him about it he told her that he had decided he did not want the property. He testified that he had made no use of the property and had never taken possession of it. He did recall the letter from Baker's attorney requesting that he reassign the lease agreement and stated at trial that he was willing to reassign at that time.

Jones' attorney also stated that he had no knowledge of the transfer of the McMillen lease prior to the date of closing and had found nothing in the contract of sale referring to it. It was his testimony that he did prepare and record the assignment but there was a collateral agreement that Jones would have a period of time in which to determine whether he would assume the obligation, and if he did not want it he would return it to Baker. It was his

understanding that Jones and his associates would look at the leased property and make a feasibility study, but there would be no further obligation if they decided not to take it.

The trial court found that the agreement for the purchase and sale of the hotel provided for the transfer of the leasehold and the omission of the description of it in the purchase agreement was a clerical error. He further found that the leasehold was an asset and its transfer was contemplated by all parties as part of the sale of the hotel. The court further found that Jones was bound by the acceptance of the assignment to the leasehold and obligated him to pay the monthly installments provided in the lease for its entire term. The court specifically found that the assignment did not violate the Statute of Frauds and that there were no "side agreements" which would relieve Jones from its obligation upon acceptance of the lease assignment. The court concluded that by acceptance of the assignment and performance under it Jones became liable to Baker for all accrued installments of rent.

Appellant first contends that the trial court erred in finding that the transaction was not violative of Ark. Stat. Ann. § 38-101 (Repl. 1962) which provides that no action may be brought to charge any person upon a lease of lands unless the agreement, promise or contract upon which the action is brought is in writing and signed by the party to be charged. He argues that the assignment was signed only by Baker and is unenforcible under the Statute of Frauds and that there was insufficient evidence of part performance on his part to remove the assignment from the Statute of Frauds, citing *Norton* v. *Hindsley,* 245 Ark. 966, 435 S.W.2d 788 (1969).

We do not view the matter as one involving the Statute of Frauds. The lease was in writing signed by the lessor and lessee, in all respects complied with Ark. Stat. Ann. § 38-101, and was an enforcible contract between those parties. The leasehold interest of Baker was assigned to Jones in a written assignment deed which clearly

identified the subject of the assignment by specific reference and met all of the requirements of Ark. Stat. Ann. § 38-105 (Repl. 1962) on the assignment of leases which requires only that the assignment be by deed or in writing and *signed by the party assigning.* The assignment of a lease signed only by the assignor is not violative of that section of the Statute of Frauds requiring that a promise to answer for the debt of another be in writing. The acceptance of an assignment of a lease places the assignee in privity of estate with the lessor and he becomes liable for those covenants which run with the land, one of which is the obligation to pay future rents while that privity exists. It is not a collateral agreement to answer for the debt of another but an original undertaking based on valid consideration. 1 *Friedman on Leases,* 2d Ed., § 7.501(c) (2) (1983). Such undertakings are not prohibited by the Statute of Frauds. *Barnett* v. *Hughey Auto Parts, Inc.,* 5 Ark. App. 1, 631 S.W.2d 623 (1982).

The issue is simply whether a preponderance of the evidence supports the finding that there was sufficient delivery and acceptance by Jones to make the assignment a binding one and to impose on him the duties of assignee under our law of landlord and tenant. Findings of fact of a circuit court sitting as a jury will not be reversed on appeal unless clearly against a preponderance of the evidence and in making that determination we give due regard to the superior opportunity of the trial court to judge the credibility of the witnesses and the weight to be given to their testimony. ARCP Rule 52(a).

In *Baston* v. *Davis,* 229 Ark. 666, 318 S.W.2d 837 (1958), Baston accepted a written assignment of a lease and went into possession under it. The Statute of Frauds was pled in that case and was rejected as being inapplicable. There the court said:

> The rule appears to be that where a person *accepts* an assignment of a lease he enters into a privity of estate with the original lessor, and becomes personally liable for the rents, (32 Am.Jur. 320 § 374) and that liability continues despite the fact the assignee

> abandons the premises, as Baston did here. Baston's *acceptance* of the written assignment and performance under it, we hold, was sufficient to make him liable for the rents *without regard to the statute of frauds,* and that his abandonment of the property did not relieve him from a liability for the remainder of the term. [Emphasis supplied]

The only discussion in *Baston* of the Statute of Frauds was contained in a recitation of the headnotes to *Chicago Attachment Co.* v. *Davis Sewing Machine Co.,* 25 N.E. 669 (Ill. 1890) which did involve an oral assignment of a lease. There the Illinois court utilized the doctrine of part performance to validate an otherwise invalid oral assignment.

Nor can we agree that the extent of the possession and performance of an assignee is a critical issue; it is his acceptance of the assignment which places him in privity of estate with the landlord. In 49 Am. Jur.2d, *Landlord and Tenant* § 460 (1970) the rule is stated as follows:

> The liability of an assignee for rent is determined by his *right to possession* and not his actual possession, and he is therefore held liable although he may not have entered into possession, if he has *accepted* the assignment, and, a fortiori, he cannot escape liability by merely abandoning the possession. The entry into possession is said to be material only as an aid in determining whether the assignment made was bona fide or only colorable. [Emphasis supplied]

See also 1 *Friedman on Leases,* 2d Ed., § 7.501(c).

In *Little* v. *Hudgins,* 117 Ark. 272, 174 S.W. 520 (1915) our court declared that the law does not contemplate that a landlord "shall hunt up his tenant and ask him to go into possession of the premises before he can claim the rent which the tenant has agreed to pay." It is the duty of the tenant to take possession unless possession is withheld from him and if he does not do so he would be liable for the rent from the beginning of the lease term.

This same rule was applied to an assignee in *Baston v. Davis, supra.* Although in *Baston* the assignee under a written assignment took actual possession for eighteen months and paid rent during that period, it is clear from the opinion of the court that it was the fact of acceptance of the assignment and not the extent and duration of possession and compliance that was the basis for the decision. There the court, quoting from *Chicago Attachment Co. v. Davis Sewing Machine Co., supra,* stated:

> The lessee is liable to the lessor by virtue of privity of estate and privity of contract. We understand that the liability of the assignee to the lessor or reversioner is by reason of the privity of estate, which, by the assignment, has been transferred from the lessee to the assignee. The fact of actual possession is frequently of vital importance, as affording a link which, in connection with the further fact such possession is derived from the lessee, will raise the presumption that there is privity of estate between the party in possession and the lessor, or even estop such party from denying such privity, but, after all, it is the privity of estate which imposes the liability. . . . *So long as it* (assignee) *continued to be the owner of the lease estate, and retained the legal title thereto, and was entitled to immediate and actual possession, such legal title drew to it the constructive possession, and it was still assignee of the term, and responsible as such.* [Emphasis supplied]

As with all other conveyances, delivery and acceptance are essential to the validity of a deed of assignment but there is no requirement that there be a formal delivery or acceptance. These questions are largely ones of intent and may be found from the acts and conduct of the parties. *Graham v. Suddeth,* 97 Ark. 283, 133 S.W. 1033 (1911). The evidence clearly discloses that there was an actual manual delivery of the assignment at the time of closing which was accepted by Jones and his attorney. It was recorded and returned to Jones who retained it in his possession thereafter and refused a request for reassignment of the lease to Baker. There was evidence that the lease had been delivered to Jones

before the first rent payment was due and paid on his behalf. Jones thereafter took no action to relieve himself of the obligations imposed by the assignment. When all of the evidence is considered and giving due regard to the superior position of the trial judge to judge the credibility of the witnesses and the weight of their testimony, we cannot say that his findings that the assignment of the lease had been delivered, accepted and acted upon, are clearly erroneous. ARCP Rule 52(a).

Here the trial court found that Jones did accept the assignment and he expressly rejected Jones' assertion that it was conditioned on subsequent acceptance. Having accepted the assignment he was entitled to immediate possession of the property and the fact that he did not take the possession is not decisive.

Nor do we find merit in the contention that the assignment was void for lack of mutuality. The duties and obligations existing between lessee and his assignor are not contractual ones but those which arise between those in privity of estate. When that privity is established the rights and obligations of the parties are those which the law imposes.

We have concluded, however, that the trial judge erred in refusing to address the issue of McMillen's duty to use all reasonable efforts to minimize the damage she sustained. *Baston* v. *Davis, supra.* For this error the judgment must be reversed and the cause remanded.

Affirmed in part; reversed and remanded in part.

COOPER and CLONINGER, JJ., agree.