## NATIONSBANC MORTGAGE CORP. *v.* Al HOPKINS and Patricia Hopkins, *et al.*

CA 02-427                                          114 S.W.3d 757

Court of Appeals of Arkansas
Division III
Opinion delivered May 7, 2003

[Petition for rehearing denied June 11, 2003.]

94

*Wright, Lindsey & Jennings LLP*, by: *Patrick J. Goss*; and *Dyke, Henry, Goldsholl & Winzerling, P.L.C.*, by: *Scot P. Goldsholl*, for appellant.

*William F. Smith*, for appellee Alfred J. Hopkins

*Phillips, Douthit & Lamoureux*. by: *Heidi M. Massey*, for appellee Patricia Hopkins.

*Streett Law Firm, P.A.*, by: *Alex G. Streett*, for appellee River Valley Bank of Russellville, Arkansas.

JOHN B. ROBBINS, Judge. This appeal is brought from a circuit court order that canceled a $150,000 promissory note and mortgage executed by appellees Al and Patricia Hopkins in favor of appellant NationsBanc, and further awarded damages, prejudgment interest, and attorney fees to Al and Patricia Hopkins resulting from NationsBanc's failure to satisfy several of the couple's prior mortgages. We affirm the damage awards to Al and Patricia Hopkins in the amounts of $300,000 and $76,423.61, respectively, but we reverse the cancellation of the $150,000 mortgage and the award of prejudgment interest and attorney fees.

Al and Patricia Hopkins were divorced in 1998. However, during the course of their marriage, they executed numerous

promissory notes for both business and personal reasons, which were secured by mortgages on their home property, referred to in the briefs as Lots 6 and 7, and the surrounding acreage, Tract 1. Between 1979 and 1995, the Hopkinses executed eight mortgages totaling nearly $600,000. These mortgages were executed in favor of Peoples Bank, Worthen Bank, and Boatmen's Bank, all of which were predecessors of appellant NationsBanc. On February 9, 1996, the Hopkinses executed yet another mortgage on Lots 6 and 7, this one securing a note in the amount of $150,000. This note had not yet been paid in full when the Hopkinses separated in February of 1997.

After Mrs. Hopkins filed a complaint for divorce, the two began working out arrangements for a property settlement agreement. It was agreed that Mr. Hopkins would receive Lots 6 and 7 and Tract 1. However, Mrs. Hopkins insisted that he refinance the property so that she would no longer be liable on the $150,000 mortgage note to NationsBanc. In March or April of 1998, Mr. Hopkins spoke with Ward Ramsay, a friend who was a former banker, and asked Ramsay if he would loan him the money to pay off the NationsBanc note. Ramsay said he would loan Hopkins up to $150,000 if he could get a clear first mortgage on the property. During this same time, Mr. Hopkins also spoke with James Biggers of River Valley Bank (RVB) about obtaining financing. Biggers testified that he was willing to loan Hopkins $150,000 if RVB could get a clear first mortgage on the property.

Upon receiving these offers, Mr. Hopkins began contacting NationsBanc to determine the amount of the payoff on the loan. He also contacted Alfred Vance of Vance Title Company to obtain a title policy. During the course of checking the title, Vance discovered that the prior mortgages in favor of NationsBanc's predecessors had not been released, even though they had been paid in full. Vance made several attempts, as did Hopkins and Ramsay, to call NationsBanc and determine whether NationsBanc would release the prior mortgages and provide the payoff on the current mortgage. However, they received no information from NationsBanc.

Meanwhile, on July 7, 1998, the Hopkinses signed a property settlement agreement. It provided that Mr. Hopkins would have

sole ownership of Lots 6 and 7 and Tract 1, which, according to later expert testimony, were valued at $300,000. Mr. Hopkins promised that within ninety days he would refinance the debt on the property and retire the current debt in full. The agreement further provided that, if Mr. Hopkins was in arrears more than 120 days in paying any installment due on the mortgage note secured by the property, whether before or after refinancing, the property would immediately revert to Mrs. Hopkins. The agreement was formally executed on August 13, 1998, the same day the divorce decree was entered.

Following entry of the decree, Hopkins, Ramsay, and Vance continued their efforts to obtain a release of the prior mortgages. On September 15, 1998, Vance wrote to NationsBanc specifically requesting that the prior mortgages be released. A similar letter followed on October 6, 1998. Mr. Hopkins also sent NationsBanc correspondence on October 7, 1998, regarding obtaining a release of the mortgages. However, NationsBanc made no effort to release the mortgages or explain why it would not do so.

During this time period, from July to October 1998, no payments were being made to NationsBanc on the $150,000 note. As a result, on November 4, 1998, NationsBanc filed a foreclosure action, alleging that payments were in arrears and seeking $146,264.51 due on the note. Both Mr. and Mrs. Hopkins filed a counterclaim against NationsBanc, asserting that they had been damaged by the bank's refusal to release the prior mortgages. Their claim was based primarily on Ark. Code Ann. § 18-40-104 (Supp. 2001), which imposes a penalty on a mortgagee who refuses to record the satisfaction of a mortgage. The statute reads, in pertinent part:

> (a) If any mortgagee, or his executor, administrator, or assignee, shall receive full satisfaction for the amount due on any mortgage, then, at the request of the person making satisfaction, the mortgagee shall acknowledge satisfaction thereof on the margin of the record in which the mortgage is recorded.
>
> (b) Acknowledgment of satisfaction, made as stated in subsection (a) of this section, shall have the effect to release the mortgage, bar all actions brought thereon, and revest in the mortgagor or his legal representatives all title to the mortgaged property.

(c) If any person receiving satisfaction does not, within sixty (60) days after being requested, acknowledge satisfaction as stated in subsection (a) of this section, he shall forfeit to the party aggrieved any sum not exceeding the amount of the mortgage money, to be recovered by a civil action in any court of competent jurisdiction.

Mr. Hopkins alleged that NationsBanc's wrongful refusal to release the prior mortgages created a cloud on the title of Lots 6 and 7 and Tract 1, rendering him unable to obtain the financing that had been promised by Ramsay and Biggers. As a result, he claimed, he was unable to comply with the property settlement agreement and lost his used-car business, Dealers X-Change. Mrs. Hopkins alleged that Mr. Hopkins's inability to comply with the property settlement agreement in various respects caused her to expend money that she would not have spent if he had complied.

Following a trial, the circuit judge found that NationsBanc had not complied with the statute, which caused the Hopkinses to suffer damages. The court canceled the current $150,000 note and mortgage, along with the interest, attorney fees, and penalties owing thereon, and found that Mr. Hopkins had suffered "additional damages to his business and to the real estate," for which he was awarded $300,000, together with prejudgment interest and an attorney fee of one-third of that amount. The court further found that Mrs. Hopkins had suffered damages of $76,423.21, an amount she would have received if Mr. Hopkins had been able to perform the property settlement agreement. She too was awarded prejudgment interest and an attorney fee of one-third of that amount. NationsBanc appeals from that judgment and argues that the trial court erred in the cancellation of the mortgage, the award of damages, and the award of prejudgment interest and attorney fees. It also argues that the court erred in considering the testimony of Mr. Hopkins's expert witness, CPA Owen Johnson.

██ We first address the court's cancellation of the $150,000 mortgage. Our reading of section 18-40-104 does not reveal any basis for the cancellation of a mortgage on which amounts are still due and owing. The statute requires that, if a mortgagee "shall receive full satisfaction for the amount due on any mortgage," he must, at the request of the person making satisfac-

tion, acknowledge satisfaction of the mortgage in the margin of the record in which the mortgage was recorded. If satisfaction is not acknowledged within sixty days after it is requested, the mortgagee "shall forfeit to the party aggrieved any sum not exceeding the amount of the mortgage money." Ark. Code Ann. § 18-40-104(c). This statute is penal in nature and must be strictly construed. *Reed v. Frauenthal*, 133 Ark. 544, 202 S.W. 700 (1918). It is apparent that it is intended to serve as a penalty against a mortgagee who fails to acknowledge satisfaction of a mortgage once it has in fact been satisfied. The $150,000 mortgage had not been satisfied but still secured approximately $146,000 in principal debt. Therefore, the court had no authority under the statute to cancel the mortgage.

■ ■ Mr. Hopkins argues that the cancellation of the mortgage in fact amounted to an award of damages as evidenced by the court's language in the decree that the note and mortgage were "canceled, forfeited, and set off." As a general rule, judgments are construed like any other instrument; the determinative factor is the intention of the court, as gathered from the judgment itself and the record. *Fox v. Fox*, 68 Ark. App. 281, 7 S.W.3d 339 (1999). The language used by the court does not necessarily indicate the court's intention to cancel the mortgage in lieu of an equivalent damage award. In fact, the use of the word "forfeit" indicates that the court was attempting to apply the penalty provision of section 18-40-104. We therefore decline to adopt Mr. Hopkins's interpretation, and we hold that the trial court erred in canceling the mortgage.

Next, we consider the award of $300,000 in damages to Mr. Hopkins. In doing so, we set out the following facts concerning the demise of Mr. Hopkins's business, Dealers X-Change, Inc. The business began to suffer sometime in 1997. It had a $450,000 line of credit at Simmons First Bank, and in November of 1997, Gene Simmons, the bank's president, revamped the floor-plan agreement based on his concern that the car lot's inventory was not being turned over quickly enough. Simmons froze the floor plan, which meant that Dealers could acquire no additional inventory, and he instituted a plan by which Dealers would reduce the current balance of approximately $400,000 to $150,000 through the sale of autos or other assets, with minimum payments of

$25,000 per month. By March 31, 1998, the debt had been reduced to $267,000. However, Mr. Hopkins testified that, as a result of NationsBanc's failure to release the prior mortgages, he was unable to obtain new financing to reinvigorate the business, which was ultimately lost to creditors in December of 1999. Expert testimony showed that, as of March 1998, the business had been worth $300,000, but it was worth nothing by December of 1999. James Biggers of River Valley Bank testified that he would have provided financing to Mr. Hopkins and that new financing would have helped Mr. Hopkins stay in business.

██ ██ NationsBanc argues that its failure to release the mortgages did not cause Mr. Hopkins's damages. In reviewing a bench trial, this court will not set aside the findings of fact by a circuit judge unless they are clearly erroneous. Ark. R. Civ. P. 52(a); *Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Lee v. Daniel, supra.* This court gives due deference to the superior position of the trial judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.* Further, it is within the province of the trier of fact to resolve conflicting testimony. *Id.*

██ NationsBanc offers various reasons in support of its argument that the failure to release the mortgages did not cause damage to Mr. Hopkins, including that Mr. Hopkins's business was already in such bad condition that refinancing could not have saved it and that Hopkins was a stockholder in Dealers X-Change and cannot claim its damages as his own. We do not see in the record that this last argument was made below; if it was made, it was not ruled upon. Therefore, we will not address it. *See Webb v. Brown*, 350 Ark. 254, 85 S.W.3d 885 (2002); *Britton v. Floyd*, 293 Ark. 397, 738 S.W.2d 408 (1987).

██ As for the other arguments, we begin by observing that Ark. Code Ann. § 18-40-104 permitted the trial court to impose damages of approximately $600,000, which represented the amount of the mortgages that had been paid but not released by

NationsBanc. As we pointed out earlier, the statute is penal in nature, and it contains no express requirement that the amount awarded under it bear a relation to damages actually caused to the aggrieved party. However, one case has held that in order for the penalty to be imposed, an actual loss must be suffered. *See Price v. Center*, 200 Ark. 19, 138 S.W.2d 391 (1940). There is no question that Mr. Hopkins suffered an actual loss in this case in the form of a lost opportunity to obtain financing that would have allowed him to comply with the property settlement agreement and breathe new life into his business. Therefore, the court's award was proper under the statute.

■ However, even if we were to read a causation requirement into the statute, we cannot say that the trial court's finding that NationsBanc caused Mr. Hopkins to suffer $300,000 in damages is clearly erroneous. The loss of the business alone — a loss that Mr. Hopkins's expert calculated to be $300,000 — would justify the award. The fact that the business had been experiencing trouble or that the financing might not have generated a large amount of cash does not render the court's finding erroneous. As of March 1998, the business had made considerable progress in debt reduction. Further, the refinancing that Mr. Hopkins hoped to obtain from James Biggers would have helped the business, according to Biggers. In light of these considerations, we uphold the $300,000 award to Mr. Hopkins.

■ Next, we review the award of $76,423.21 to Mrs. Hopkins. The award was based on her testimony that she incurred the following expenses when Mr. Hopkins was unable to comply with the property settlement agreement: (1) $7,854 in interest on other real property; (2) the $5,500 value of her son Michael's four-wheeler and trailer, which she had not received; (3) $25,000 in cash, which Mr. Hopkins was supposed to pay in lieu of his being relieved of certain debts; (4) the loss of a sale of other real property, which was later sold for $57,900 less (making her one-half interest in the loss $28,950); (5) $4,458 in Michael's college expenses; and (6) $7,659 in life insurance premiums. NationsBanc argues that the award of $76,423.21 to Mrs. Hopkins is inconsistent with the trial court's finding that Mr. Hopkins suffered $300,000 in damages because her damages represent an

amount that he owed her under the property settlement agreement; therefore, to entitle Mrs. Hopkins to an award, Mr. Hopkins would had to have suffered more than $300,000 in damages. While we understand NationsBanc's argument that the court has in effect paid Mrs. Hopkins a debt that was owed to her by Mr. Hopkins, we disagree that the award is incompatible with the trial court's damage award to Mr. Hopkins. As we pointed out earlier, under section 18-40-104, approximately $600,000 could have been awarded against NationsBanc for its failure to release the prior mortgages. It is therefore possible to award a total amount of damages to both parties greater than $300,000. Consequently, we affirm the damage award to Mrs. Hopkins.

Before leaving the damages issues, we address NationsBanc's argument that it was not required to release the prior mortgages because all the mortgages contained "future advance" or "other debt" clauses. NationsBanc claims that, as a result of these clauses, the prior mortgages secured not only the particular debt to which they applied but all future debt owed by the Hopkinses to NationsBanc; therefore, as long as the Hopkinses were indebted to the bank in any amount, the mortgages were not satisfied.

NationsBanc does not cite a single case in support of its argument. Where an argument is not properly developed on appeal and not supported by convincing argument or authority, we will not address it. *See Spears v. Spears*, 339 Ark. 162, 3 S.W.3d 691 (1999). In any event, each of the prior mortgages was a separate, free-standing transaction and not an extension of a prior mortgage or an advance. There is nothing to clearly indicate that these mortgages would cover future, unrelated indebtedness. Further, we conclude that NationsBanc has waived this argument. Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. *Continental Ins. Co. v. Stanley*, 263 Ark. 638, 569 S.W.2d 653 (1978). It may occur when one, with full knowledge of material facts, does something which is inconsistent with the right or his intention to rely upon the right. *Id.* The relinquishment of the right must be intentional. *Id.* During the time that Mr. Hopkins and his agents were attempting to get the prior mortgages released, NationsBanc never

explained that its failure to release the mortgages was based on these clauses. In fact, it offered no explanation at all. Further, in the October 6, 1998, letter written to NationsBanc by Alfred Vance, Vance asked the bank to send a statement that, when Hopkins paid off the current note, NationsBanc would release the mortgages — a solution that would have been consistent with the application of the clauses. NationsBanc never responded. Finally, NationsBanc actually released the mortgages in February 1999, an action inconsistent with the argument it now makes.

We turn now to the evidentiary issue concerning Mr. Hopkins's expert witness, CPA Owen T. Johnson. The controversy surrounds Johnson's valuation of Mr. Hopkins's business, at $300,000. Johnson reached this figure by viewing Mr. Hopkins's handwritten statement of his assets and liabilities, which showed a net worth of $234,989. He then logged onto a web site that contained sale prices of used car dealerships. He used those sales prices to calculate a shareholder equity ratio of 3.4:1, multiplied that factor times the business's net worth of $234,989, deducted the business's liabilities, and arrived at approximately $300,000. At trial, NationsBanc argues that the methods Johnson used to arrive at his valuation were questionable and moved to strike his testimony. The judge denied the motion but said he would consider NationsBanc arguments in weighing the credibility of Johnson's opinion.

On appeal, NationsBanc argues that Johnson used only Hopkins's unsupported handwritten statement as a starting point for his analysis, did not have enough information to use the approaches he normally employed in valuing a business, and based his valuation on sales of auto dealerships that were not at all comparable to Hopkins's dealership. A trial court's decision on the admissibility of expert testimony will not be reversed absent an abuse of discretion. *Lee v. Daniel, supra.* Further, the strength or weakness of an expert's testimony goes toward the weight and credibility to give the testimony and not toward its admissibility. *See generally Wood v. State*, 75 Ark. App. 22, 53 S.W.3d 56 (2001). The trial judge said he would consider NationsBanc's arguments in assessing Johnson's credibility. In light of that fact, and in light of the fact that no other expert testimony was presented on this matter, and that Johnson's valuation was reasonable in light of the

$234,989 net worth of the business (which the trial court could have found credible), we cannot say that the court abused its discretion in failing to strike the testimony.

NationsBanc argues next that the trial court erred in awarding prejudgment interest. To support an award of prejudgment interest, damages should be reasonably ascertainable both as to time and amount. *Dugal Logging, Inc. v. Arkansas Pulpwood, Inc.*, 66 Ark. App. 22, 988 S.W.2d 25 (1999). If a method exists for fixing the exact value of a cause of action at the time of the occurrence of the event that gives rise to the cause of action, prejudgment interest should be awarded. *Id.* Put another way, where the amount of damages is definitely ascertainable by mathematical computation or if the evidence furnishes data that make it possible to compute the amount without reliance on opinion or discretion, prejudgment interest should be awarded. *Id.*

NationsBanc argues that the damages awarded in this case were not capable of being fixed at the time of the occurrence of the event that gave rise to the cause of action. We agree. The damages arose from Mr. Hopkins's inability to comply with the property settlement agreement, which consequently caused damage to his realty and business interests. The value of those interests only became clear after presentation of expert valuation testimony at trial. Therefore, it cannot be said that, prior to that point, they were reasonably ascertainable as to time and amount. *See generally Woodline Motor Freight v. Troutman Oil Co.*, 327 Ark. 448, 938 S.W.2d 565 (1997). The prejudgment interest award is therefore reversed.

As for the attorney fee award, the court entered the award based on Ark. Code Ann. § 16-22-308 (Repl. 1999), which reads:

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney fee to be assessed by the court and collected as costs.

In its decree, the trial court stated that NationsBanc had negligently failed to perform its statutory and contractual duties, apparently finding that the Hopkins's claims sounded, at least in part, in contract. However, an award of attorney's fees under section 16-22-308 is proper only when the action is based primarily in contract. *Reed v. Smith Steel*, 77 Ark. App. 110, 78 S.W.3d 118 (2002). We do not view this case as one that is primarily based in contract; its true nature is an action for violation of a statute and possibly negligence. Neither of these causes of action support an attorney fee award under section 16-22-308. We therefore reverse on this point.

Affirmed in part; reversed in part.

STROUD, C.J., and CRABTREE, J., agree.