William and Anne ABERNATHY *v.* Abdulazize ADOUS
and Griffith Petroleum, Inc.

CA 03-640 149 S.W.3d 884

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered February 25, 2004

[Rehearing denied March 31, 2004.*]

---

* ROBBINS and ROAF, JJ., would grant rehearing.

*Stephen K. Wood*, for appellants.

*Rieves, Rubens & Mayton*, by: *Elton A. Rieves III*; and *Apperson, Crump & Maxwell, PLC*, by: *Jay Miller*, for appellees.

KAREN R. BAKER, Judge. This appeal is brought from an order declaring appellee Abdulazize Adous the assignee of a commercial-lease contract and further declaring that equity should intervene to avoid forfeiture of the lease contract. We reverse and remand.

The property that is the subject of the lease is a service station/convenience store in West Memphis. When the lease was

executed in 1992, appellants, the owners of the property, agreed to build the service station for the original lessee, appellee Griffith Petroleum, Inc. (GPI). Appellants financed the construction through Fidelity National Bank. The lease was for a ten-year term, to begin upon completion of construction, with six consecutive five-year options to renew. The monthly lease payment for the first ten years was to be the amount that appellants owed to Fidelity National Bank ($3,412.60), plus the additional sum of $583.33 per month, for a total of $3,995.93. GPI agreed to write two checks each month, one directly to Fidelity National for $3,412.60 and the other to appellants for $583.33. Among the provisions of the lease were that the lessee would be in default upon failure to pay rent in a timely manner or upon becoming insolvent. The lease contained no prohibition against subleasing or assignment.

GPI began operating the service station as a lessee on or about August 1992. On November 15, 1996, it executed a document titled "Sublease Agreement" with Maref Quran whereby Quran would operate the facility for an initial term of five years and eight months with six consecutive five-year options. Quran's lease payment for the initial term was to be "the exact amount that William G. Abernathy and Anne Abernathy (the record title holders to the real property) are responsible for paying their lender who has the long-term financing on the leased premises, plus the additional sum of Five Hundred Eighty Three and 33/100 Dollars ($583.33) per month." Quran was to make the rental payments to GPI, who would then remit the payments to Fidelity and appellants. On July 14, 1997, appellee Abdulazize Adous was added as a subtenant of the site under a document styled "Addendum to Sublease Agreement." Eventually, he became the sole subtenant.

After executing his sublease, Adous made monthly lease payments to GPI, who in turn made payments to Fidelity National and appellants. There is no evidence that appellants knew of the sublease. However, Adous's operation of the business apparently continued without controversy until January 2001, when GPI failed to pay rent to appellants. Appellants filed an unlawful-detainer action against GPI as lessee and Adous as sublessee, seeking to recover possession of the property.[1] On March 15, 2001, GPI and Adous (apparently doing business as Coastal

---

[1] Appellants' naming of Adous as a sublessee is the first indication in the record that appellants were aware of the existence of the sublease.

C–Mart) paid $11,985.99 into the court registry, representing three months' rent for January through March 2001. Shortly thereafter, appellants nonsuited their action, and the court clerk distributed the $11,985.99, plus interest, to them.

In April 2001, GPI again failed to pay the rent it owed. Adous tendered the rent directly to appellants, but it was refused. On May 1, 2001, Adous sued appellants and GPI for specific performance, seeking an order directing appellants to accept all rental payments made by him or, alternatively, directing GPI to accept the payments and then remit them to appellants and/or Fidelity National. Adous pled $3,995.33 into the court registry, representing one month's rent, a practice he would continue each month while awaiting trial.

On June 8, 2001, appellants notified GPI that they were terminating the 1992 lease for nonpayment of rent. Later, when they discovered that GPI had become insolvent, they sent a supplemental notice to GPI and Adous, terminating the lease on that ground. Despite the fact that appellants demanded surrender of the premises in their notices of termination, Adous remained on the property.

A trial was held in circuit court on June 26, 2002, with the trial judge sitting as finder of fact. Appellants argued that Adous's rights as a subtenant were derived from GPI's rights as the original lessee, and thus, when GPI breached the 1992 lease by failing to pay rent and by becoming insolvent, Adous's right of occupancy, being derivative, was terminated. Adous agreed that a sublessee's rights are generally derivative of the original lessee's, but he argued that, for various equitable reasons, appellants should not be permitted to declare a forfeiture of the sublease in this case.

On August 5, 2002, the trial judge issued a letter ruling in which he declared Adous a "bona fide assignee" of the 1992 lease and "entitled to enjoy the status of lessee, under assignment for the said original lease." The court also determined that forfeiture of Adous's lease would be inequitable. Appellants now argue on appeal that these findings were erroneous because: 1) Adous was a sublessee rather than an assignee; 2) as a sublessee, Adous was required to surrender possession of the premises upon breach by the original lessee, GPI; 3) forfeiture of the sublease was not inequitable. We agree with each of these arguments.

■ We have traditionally reviewed matters that sounded in equity *de novo* on the record with respect to fact questions and legal questions. *See Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d

681 (2002). We will not reverse a finding by a trial court in an equity case unless it is clearly erroneous. *Id.* A finding of fact is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

We first address appellants' argument that the trial court erred in characterizing Adous as an assignee rather than a sublessee. Initially, we consider Adous's contention that appellants are precluded from making this argument because they did not object below to the trial court's ruling on this point. However, the trial court's characterization of Adous as an assignee was made for the first time in its findings of fact and conclusions of law. Until that point, the parties consistently referred to Adous as a sublessee, and the issue of whether he was an assignee had not arisen. Thus, it would have been impossible for appellants to object prior to the court making its decision. As for any failure to object after the court made its findings, an appellant is not required to make a contemporaneous objection to the findings, conclusions, and decree of an equity court to obtain review on appeal. *Jones v. Abraham*, 341 Ark. 66, 15 S.W.3d 310 (2000); *Martin v. Martin*, 79 Ark. App. 309, 87 S.W.3d 817 (2002). Thus, appellants' argument is not procedurally barred.

As for the merits of the issue, there is an important distinction between a sublessee and an assignee for purposes of this case. A sublessee's right to possession terminates when the original landlord declares a forfeiture of the original lease. *See Bush v. Bourland*, 206 Ark. 275, 174 S.W.2d 936 (1943); 49 AM. JUR. 2D *Landlord & Tenant* § 1185 (2d ed. 1995). An assignee, however, acquires privity of estate with the original landlord, *see Jones v. Innkeepers, Inc.*, 12 Ark. App. 364, 676 S.W.2d 761 (1984), and enters into a landlord-tenant relationship with the original landlord. *See* 52 C.J.S. *Landlord & Tenant* § 50 (2003). The assignee's estate continues if he meets his obligations under the assignment, *e.g.,* to pay rent. *Id.* at § 53.

At common law, the distinction between a sublease and an assignment depended upon whether the original lessee transferred his estate for the entire remainder of the lease term, in which case it would be an assignment, or for less than the entire term, in which case it would be a sublease. *See Gagne v. Hartmeier*, 271 Ark. 845, 611 S.W.2d 194 (Ark. App. 1981). However,

Arkansas has rejected that approach and has adopted the rule that the intention of the parties is to govern in determining whether an instrument is an assignment or a sublease, although the duration of the primary term, as compared with the duration of the transfer, may be considered in arriving at that intention. *Id.; Jaber v. Miller*, 219 Ark. 59, 239 S.W.2d 760 (1951). Our review of the evidence leads us to the conclusion that the parties clearly intended Adous to be a sublessee.

The most telling indicator of Adous's and GPI's intention in this case is that they have consistently referred to their arrangement as a sublease. The characterization that the parties give to their relationship is a significant factor to be considered in determining whether they intended to create a sublease or an assignment. *See Jaber v. Miller, supra.* The instruments of transfer in this case are entitled "subleases." Further, in their pleadings and at trial, the parties exclusively referred to GPI's transfer to Adous as a sublease rather than an assignment. Until the trial court declared Adous an assignee, the parties had never contemplated him being anything other than a sublessee. Thus, as in *Jaber*, the parties' intention should govern.

Another factor indicating that the parties intended to create a sublease is Adous's payment of rent to GPI rather than to appellants or Fidelity National. This is consistent with the rule that, in a sublease, the relationship between the original lessee and the sublessee is that of landlord and tenant, and the sublessee incurs no liability directly to the original lessor for payment of rent. 49 AM. JUR. 2D *Landlord & Tenant* §§ 1179, 1,184 (1995).

A third indicator that the arrangement was a sublease is found in the possibility of repossession by GPI. The Sublease Agreement provides:

> In the event that Lessor [GPI] elects to repossess the premises without terminating the sublease, then Lessee shall be liable for and shall pay to Lessor all rent and other indebtedness accrued to the date of such repossession....

Such a right to reenter and repossess indicates that GPI has not relinquished its right to the leasehold, as it would have done in the case of an assignment. *See generally* 52 C.J.S. *Landlord & Tenant* § 55 (2003); *Coles Trading Co. v. Spiegel, Inc.*, 187 F.2d 984 (9th Cir. 1951).

Admittedly, there are some parts of the arrangement between Adous and GPI that are consistent with an assignment.

The amount of Adous's rent was exactly the amount of the rent to be paid under the original lease; Adous agreed to observe the terms of the original lease; and the property was transferred to Adous for what appears to be the remainder of the original lease term. However, these factors simply do not override the undisputed fact that the parties very clearly intended a sublease. Both they and their attorneys have consistently considered this arrangement to be a sublease. Our polestar is the intention of the parties. *Jaber, supra.* Because the evidence points so strongly to the conclusion that the parties intended Adous to be a sublessee rather than an assignee, we hold that the trial court clearly erred in finding that Adous was an assignee.

We now turn to the question of whether equity should intervene to prevent appellants from seeking forfeiture of Adous's sublease. The first matter to be considered is whether appellants waived their right to forfeiture of the sublease by accepting rent payments from the court registry in April 2001, knowing that the rent had been paid by Adous and knowing that GPI was insolvent. We hold that they did not.

Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. *Nationsbanc Mortgage Corp. v. Hopkins*, 82 Ark. App. 91, 114 S.W.3d 757 (2003). It may occur when one, with full knowledge of material facts, does something that is inconsistent with the right or his intention to rely upon the right. *Id.* The relinquishment of the right must be intentional. *Id.*

The money that appellants collected in April 2001 was paid into the court registry by GPI and Coastal C-Mart. At trial, William Abernathy testified that he did not know that Coastal C-Mart was Adous. This is the only evidence in the record regarding appellants' knowledge or lack of knowledge that they had accepted money from Adous. Further, Abernathy testified that he was not aware of GPI's insolvency until May or June of 2001, *after* appellants had accepted the money from the court registry. Thus, the evidence does not establish that appellants knowingly accepted rent from Adous or that they knew GPI was insolvent at the time they accepted the money from the registry.

The next matter to be considered is whether appellants are prohibited from seeking forfeiture of the sublease

because the master lease has no express forfeiture clause. A tenancy cannot be terminated for breach of a covenant where there is no express provision for a forfeiture. *See Mauney v. Millar*, 134 Ark. 15, 203 S.W. 10 (1918); *Vereen v. Hargrove*, 80 Ark. App. 385, 96 S.W.3d 762 (2003). It is true that the lease in this case contains no clause expressly providing that the lessee will lose possession or forfeit the lease upon default. However, the lease does provide that, upon default, appellants shall have all remedies available by law or equity. One such available remedy is unlawful detainer, as provided in Ark. Code Ann. §§ 18-60-304 and 307 (Repl. 2003). These statutes give a lessor the opportunity to reacquire possession of leased property. *See Coleman's Serv. Ctr. v. FDIC*, 55 Ark. App. 275, 935 S.W.2d 289 (1996). Thus, the unlawful detainer remedy is tantamount to the remedy that would be available under a forfeiture provision. *See, e.g., Riverside Dev. Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982). Therefore, the absence of the forfeiture clause in this case would not prohibit appellants from canceling the lease and reacquiring possession of the property.

Finally, we reach the issue of whether the maxim that equity abhors a forfeiture should be applied in this case. The trial court determined that forfeiture would not be equitable because Adous had shown his ability to perform under the lease; the original lease contained no prohibition against subletting; Adous was operating an ongoing business on the site; and appellants would not be prejudiced by Adous's continued occupation of the site. However, the trial court applied these considerations after finding that Adous was an assignee. We have now determined that Adous was a sublessee. We therefore, in our *de novo* review, re-examine the equitable considerations in light of Adous's status as a sublessee.

 Certainly, forfeitures are not favorites of the law. *Vereen v. Hargrove, supra*. However, because Adous is a sublessee, he has no privity of estate nor a landlord-tenant relationship with appellants. 49 AM. JUR. 2D *Landlord & Tenant* § 1184 (2d ed. 1995). To allow equity to intervene to prevent forfeiture of the sublease in this situation would create a relationship between appellants and Adous that appellants never desired, that none of the parties ever contemplated, and that, in fact, has never existed. Further, as a sublessee, Adous's fate with regard to the property must rise and fall with that of the original lessee, GPI. *See Bush v. Bourland, supra*. Adous considered himself a sublessee and, by virtue of agreeing to the terms of the original lease, was surely aware of its provisions; he

must have understood that his status depended upon the continued performance of the original lease by GPI. *See generally USA Petroleum Corp. v. Jopat Bldg. Corp.*, 343 So.2d 501 (Ala. 1977); *Thal v. S.G.D. Corp.*, 625 So.2d 852 (Fla. Ct. App. 1993). Therefore, this is not a situation in which Adous was caught unaware. Finally, appellants' decision to terminate the lease was based not only upon GPI's failure to pay rent, but upon GPI's insolvency. While Adous may have proved an able substitute to meet GPI's rent obligation, he could not restore GPI to solvency. *See USA Petroleum Corp. v. Jopat Bldg. Corp., supra.* Equity should not deprive appellants of their ability to terminate a lease on that ground.

Based on the foregoing, we hold that equity should not intervene to prohibit forfeiture of the sublease in this case. We therefore reverse and remand the trial court's decree with directions to enter an order consistent with this opinion.

BIRD, GRIFFEN, and CRABTREE, JJ., agree.

ROBBINS and ROAF, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. Whether Adous is characterized as a sublessee or an assignee is a distinction without a difference. Either characterization would permit the trial court to apply equitable considerations to avoid forfeiture of the sublease.

The absence of privity between Adous and appellants has no bearing on whether equity may intervene to enjoin a forfeiture. In *Smith v. Whitener*, 42 Ark. App. 225, 856 S.W.2d 328 (1993), this court held that privity of parties was not required in order for a plaintiff to assert the equitable remedy of unjust enrichment. Further, the cases from other jurisdictions cited by the majority, *USA Petroleum Corp. v. Jopat Bldg. Corp.*, 343 So.2d 501 (Ala. 1977), and *Thal v. S.G.D. Corp.*, 625 So.2d 852 (Fla. Ct. App. 1993), do not prohibit the intervention of equity on behalf of a sublessee; rather, they decline to invoke equity under the particular facts of those cases.

Our inquiry in the case at bar should simply be whether the trial court's decision to apply equity was clearly erroneous. I do not believe that it was. A court of equity, even in the absence of special circumstances of fraud, accident, or mistake, may relieve against a forfeiture incurred by the breach of a covenant to pay rent, on the payment or tender of all arrears of rent and interest by a defaulting lessee. *See generally Duncan v. Malcomb*, 234 Ark. 146, 351 S.W.2d

419 (1961). The grounds upon which a court of equity proceeds in this connection are: that the rent is the object of the parties, and the forfeiture only an incident intended to secure its payment; that the measure of damages is fixed and certain; and that when the principal and interest are paid, the compensation is complete. *Id.* Further, the doctrine of equity is not for forfeiture, and the most vital question in determining whether a court of equity will grant relief against a penalty or forfeiture is said to be the ability and willingness of the party in default subsequently to perform the condition or make compensation for his failure of performance. *Watson v. Stout Lumber Co.*, 175 Ark. 240, 298 S.W. 1010 (1927). Although these cases involved the application of equity between the original lessor and lessee, under the particular facts of the case at bar, I believe this distinction makes no difference.

This was a long-term commercial lease in which appellants as lessors did not see fit to prohibit either an assignment or a sublease. Thus, they surely could not be surprised that a sublease was executed, nor could Adous be charged with notice that a sublease would be looked upon by appellants with disfavor. Further, before the controversy arose in this case, Adous had apparently operated the gas station and convenience store for over three years without incident and without prejudice to appellants. After the controversy arose, he proved his continuing ability to operate at the· site and pay rent in a timely manner. Thus, appellants have received exactly what they sought — a lease of the facility over a long period of time with timely payment of rent. The inequity in this case lies in the fact that Adous, who has agreed to uphold the terms of the original lease and has paid rent in a regular fashion, must now forfeit the business he has operated simply because GPI, who after 1997 was acting as a mere conduit, became unable to pay rent. This is the type of forfeiture that equity should prevent, and I believe the trial court was correct in attempting to do so. I therefore respectfully dissent.

ROAF, J., joins in this dissent.

ANDREE LAYTON ROAF, Judge, dissenting. While I agree with and also join Judge Robbins' dissent, I would not reach the issue of whether the trial court could apply equitable considerations to the forfeiture of a sublease, because I would affirm the trial court's finding that Adous was an assignee of the lease between the Abernathys and Griffen Petroleum, Inc. (GPI).

The majority has found that the three factors indicating the arrangement is a sublease overrode the three factors which suggest that it is an assignment, placing great emphasis on the parties' characterization of the instrument as a sublease. The other two factors favoring a sublease are the fact that Adous paid rent to GPI rather than directly to the Abernathys, and a clause in the agreement giving GPI the right of reentry and possession of the premises. However, this right of reentry was available *only in the event of a default* by Adous, *and only pursuant to a judgment or writ issued in an appropriate legal proceeding.* In *Jaber v. Miller*, 219 Ark. 59, 239 S.W.2d 760 (1951), the supreme court expressly rejected the appellee's argument that reserved rights of reentry rendered an agreement a sublease, in reversing the trial court's ruling that the document in question was a sublease rather than an assignment. This court also reversed the trial court's characterization of an instrument as a sublease despite the appellee's retention of the right of reentry for nonpayment of rent and other rights, noting that "none of the rights retained by appellant rise to the dignity of a reversionary estate." *Gagne v. Hartmeier*, 271 Ark. 845, 611 S.W.2d 194 (Ark. App. 1981). These two cases are relied upon by the majority to a great extent, however; they suggest that the nature of the rights transferred is key to the determination of the parties' intent, and in both cases the instrument in question was found to be an assignment despite factors indicating the contrary.

In this instance, the factors favoring assignment are equally as compelling or even stronger. First, the amount of Adous's rent was exactly the amount of the rent to be paid under the original lease. Had the amounts been different, that would have indicated a sublease. 52 C.J.S. *Landlord & Tenant* § 43 (2003). Second, the Second Addendum to the Sublease contains the following provision:

> COMPLIANCE WITH ORIGINAL LEASE: New Lessees shall perform and observe the terms and conditions to be performed on the part of [GPI] in the original Lease Agreement pertaining to this property between [GPI] and...Abernathy. Additionally, New Lessees agree to indemnify [GPI] against any and all claims, damages, costs, and expenses in respect to New Lessees nonperformance or nonobservance of any terms or conditions contained in the original Lease Agreement.

Incorporation of the original lease into the transferring instrument indicates an assignment. *Gagne v. Hartmeier, supra.* Thirdly, GPI

transferred the lease to Adous for the entire remainder of the original lease term. The original primary term of the lease was ten years, to begin upon completion of construction. According to William Abernathy, construction was completed in August 1992. Thus, when the first subtenancy agreement was executed in November 1996, there was approximately five years and nine months remaining in the original term, plus options. The agreement between GPI and Adous was for five years and eight months *plus options*.

In sum, GPI transferred all of its rights of any significance in the lease, including options to renew, to Adous. Adous faithfully performed in a timely manner for a number of years, until he was compelled to file suit for specific performance in May 2001 because the Abernathys refused to accept rent tendered directly by him. As in *Gagne, supra,* there was no reversionary estate remaining to GPI. I cannot say that the trial court's characterization of this contractual arrangement as an assignment despite the parties' labeling it as a sublease was clearly erroneous.